[No. B142814. Second Dist., Div. Seven. Jan. 29, 2002.]

GEOFREY SCOTT PAUL, Plaintiff and Appellant, v.
MICHAEL E. FRIEDMAN, Defendant and Appellant.

## COUNSEL

Keesal, Young & Logan, Samuel A. Keesal, Jr., Neal S. Robb and Dawn M. Schock for Plaintiff and Appellant.

Ohashi & Priver and Mark S. Priver for Defendant and Appellant.

## OPINION

**BOLAND, J.\*—**

### SUMMARY

This case involves the question whether a lawyer's investigative acts in the course of prosecuting his clients' arbitration claims against a securities broker were acts in furtherance of his free speech rights within the meaning of California's anti-SLAPP (strategic lawsuit against public participation) statute.

We conclude the lawyer's acts alleged in the broker's subsequent lawsuit did not fall within the purview of the anti-SLAPP statute, because the acts alleged did not occur in connection with an issue under consideration or review in the arbitration. Accordingly, the lawyer's special motion to strike the broker's complaint against him as a meritless lawsuit brought primarily to chill the valid exercise of his constitutional rights should have been denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Geoffrey Scott Paul, a securities broker, brought this lawsuit against 11 former brokerage clients and their lawyer, Michael E. Friedman. The lawsuit arose from acts that occurred prior to and during an arbitration in which

---

*Associate Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Paul's former clients sought $31 million in compensatory damages from Paul and his employer, CIBC Oppenheimer. In the arbitration, the claimants alleged Paul violated securities laws, committed fraud, breached his fiduciary duties, was negligent and made unsuitable investment recommendations.[1] The arbitration resulted in complete vindication for Paul and Oppenheimer, and in sanctions against Friedman and the claimants for $700,000 "for the filing of a frivolous claim for which there was no factual foundation, and that the claims were intended to harass" Paul and CIBC Oppenheimer.[2]

Paul then filed this lawsuit against Friedman and his clients, asserting causes of action for intentional infliction of emotional distress, libel and slander,[3] invasion of privacy, tortious interference with economic relationships, malicious prosecution, and breach of a confidentiality agreement. Paul also sought an injunction against further breaches of the confidentiality agreement. As relevant to this appeal, the complaint alleged that:

—Before and during the arbitration, Friedman, the claimants and/or their agents conducted an "investigation" of Paul that far exceeded the scope of permissible discovery or investigation in the arbitration and was unreasonably intrusive.

—In conducting the investigation, Friedman made public disclosures of embarrassing private facts about Paul to clients and prospective clients, including his financial affairs, spending habits, taxes and tax liabilities, relations with his clients, and close personal relationship with another individual (as well as the allegations made in the arbitration).

---

[1] The claimants became dissatisfied when the stock of MedPartners, which they had received through a merger in the healthcare industry, fell drastically in value. The claimants hired Paul after the merger to advise them about whether to hold or sell the stock. Most of them decided to sell some of their shares and hold some of them. Two years later, the price of their remaining shares fell drastically in value after an anticipated merger fell through. The claimants alleged they lost millions of dollars because Paul improperly convinced them to continue to hold huge positions in MedPartners. They specifically alleged claims for over-concentration and fraud, unsuitable and fraudulent speculation in options, unsuitable margin borrowing, high-risk limited partnerships, fraudulent recommendations and, as to CIBC Oppenheimer, failure to supervise.

[2] The award also ordered that all references to the arbitration and other related complaints and claims filed by any of the claimants be expunged from the Central Registration Depository records of Paul and CIBC Oppenheimer, "due to the defamatory nature of the information in the CRD system."

[3] The libel and slander count was alleged against defendant Randall Johnson and Doe defendants only, and centered on an anonymous letter Johnson wrote to CIBC's parent company. The letter claimed many of Paul's clients lost huge sums of money, and Paul was a dangerous and amoral man, tried to cover up his activities after losing huge sums of money for a client's estate, and had numerous lawsuits against him. The trial court refused to strike the causes of action against Johnson relating to the letter. Johnson filed an appeal, but after Paul's opening brief was filed, the parties settled and Johnson's appeal was dismissed.

—Friedman or his agents intruded into private places and private affairs, including entry into property owned by Paul, covert surveillance of Paul, seeking private financial, credit, tax and occupational information, and questioning individuals with no possible knowledge of the claims made in the arbitration.

—Friedman procured a client list and other internal documents of CIBC Oppenheimer containing trade secrets by improper means, used those documents to identify Paul's clients, and made false accusations and/or embarrassing disclosures about Paul to those clients.

—After commencement of the arbitration and at the outset of an unsuccessful mediation of the dispute, Paul and Friedman entered into a written confidentiality agreement. In breach of that agreement, Friedman (a) sent a written communication to a legal periodical disclosing information and statements communicated to the mediator, and (b) filed written declarations in a civil proceeding describing statements and evaluations made by the mediator in the course of the mediation.[4]

Friedman filed a special motion to strike Paul's first amended complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[5] Friedman's motion claimed Paul's complaint was based on his efforts as claimants' counsel to diligently pursue their right to petition an adjudicatory body for redress of wrongs. Friedman's affidavit in support of his motion explained that in the arbitration, his argument in support of the claims was that Paul's judgment was impaired during the time he served as the claimants' investment advisor. Therefore, issues about Paul's financial condition and drug and alcohol use were relevant to prove whether he acted negligently or breached his fiduciary duties to the claimants. Friedman pointed to (a) Paul's stipulation, in connection with a discovery dispute that, despite earning millions of dollars each year, Paul was under financial pressure and borrowed thousands of dollars to buy and renovate a house and an inn and to purchase antiques; and (b) the arbitrators' admission of evidence of Paul's guilty plea to a driving under the influence charge, and Paul's and his companion's drug and alcohol use, to prove that Paul had impaired judgment

---

[4]This occurred in the proceeding in which Friedman unsuccessfully sought to vacate the arbitration award. The judgment confirming the award is now on appeal in Division One.

[5]Special motions to strike were also filed by the other defendants and ruled upon by the trial court, and appeals and cross-appeals were filed. Pursuant to stipulation, this court has entered orders of dismissal of all appeals and cross-appeals relating to all defendants except Friedman.

and was distracted from his duties.[6] Friedman declared he had no reason to believe the investigators he hired engaged in any unlawful conduct in their investigation of Paul.

Paul's affidavits in opposition to the motion to strike asserted that Friedman's investigation involved inquiry into facts and allegations unrelated to the claims made in the arbitration and unnecessary to achieve the objects of the arbitration. An affidavit from Neal Robb, Paul's counsel in the arbitration, pointed out the arbitrators sustained objections to Friedman's discovery requests for documents showing "treatment for alcohol, drug, substance abuse, psychological or psychiatric conditions," "items owned by any foundation or partnership in which Paul has an ownership interest," "expense reports" for business trips taken by Paul, and "any complaint of [any other] customer" of Paul or CIBC about MedPartners. The Robb affidavit also pointed out it was customary in private securities arbitrations for arbitrators to hear most evidence proffered, and it was clear the arbitrators had no interest in the questions or answers relating to personal relationships, drunk-driving arrests, real estate holdings, tax obligations, personal spending habits, antiques buying and alcohol or drug use, to which Paul's counsel repeatedly lodged objections. Paul also presented affidavits to support his claim Friedman used deceptive and harassing tactics during his investigation of the arbitration case against Paul,[7] and asked an attorney for a subpoenaed witness in the arbitration to inquire of his client as to Paul's alleged drug and alcohol abuse. Other affidavits described activities of Friedman's investigators. An affidavit from Bernard Belonsky, one of Paul's clients, asserts that

---

[6]Friedman's declaration states that the claims asserted in the arbitration included breach of fiduciary duty, common law fraud and negligence, and that:

"In support of those legal claims I argued that [Paul] had impaired judgment during the time he served as my clients' (defendants herein) investment advisor. Thus, questions about Paul's financial condition, and his drug and alcohol use, were relevant in the arbitration to prove whether Paul acted negligently or breached his fiduciary duties to my clients.

"[T]he arbitrators admitted evidence of Paul's guilty plea to a charge of driving under the influence of drugs or alcohol and his and his companion's (Millen Andrew) drug and alcohol use.[*] This evidence was admitted to prove that Paul had impaired judgment and was distracted from his duties as my clients' fiduciary representative. . . . The arbitrators permitted me to examine Paul about the extent to which he was distracted by these events from his duties as an investment advisor."

---

[*]The only reference to either person's drug use in the transcript attached to Friedman's declaration was Paul's answer "No" to the question "Did Mr. Belonsky ever tell you that he believed that Millin Andrews' behavior was due to use of illegal drugs and alcohol abuse?"

[7]Karen Johnson's affidavit stated Friedman told her brother, David Zarider, he (Friedman) wanted to locate Johnson to do business with her, but he actually wanted to ask her questions about Paul; Friedman's repeated calls caused her to feel harassed; Friedman was extremely intimidating; and a letter from Friedman incorrectly stated that registered representatives and licensed individuals in the industry were required to provide information to help arbitrators decide claims, leading Johnson to believe she was required to cooperate and meet with Friedman.

an investigator hired by Friedman misrepresented himself to gain access to Belonsky, and told Belonsky that Paul was financially irresponsible, misappropriated client funds, and lost tens of millions of dollars for clients. The investigator also told Belonsky that other individuals reported Paul and Belonsky's son were high on drugs at a party at Paul's condominium and Paul sent Belonsky's son out to buy drugs. The investigator told Belonsky Paul was impaired and not capable of doing his job because of drugs, had convictions for drunk driving, had been fired from Merrill Lynch and left under a cloud, had liens on his condominium and was financially out of control.

While Friedman's special motion to strike was pending, Paul filed a motion to conduct specified discovery and to stay or continue the hearing on the motion to strike.[8] Paul argued that if the court believed the anti-SLAPP statute applied, he should be permitted to conduct limited discovery to develop sufficient evidence to demonstrate a probability he would prevail on his claims.

A hearing on the motions was conducted on June 15, 2000. Following argument, the trial court (a) denied Paul's motion to conduct specified discovery;[9] (b) granted Friedman's motion to strike the causes of action for intentional infliction of emotional distress, violation of the right to privacy, interference with economic advantage and malicious prosecution; (c) denied Friedman's motion to strike the causes of action claiming breach of the confidentiality agreement and seeking injunctive relief; and (d) denied Friedman's request for attorney fees and costs. The court concluded that the activity attributed to Friedman and his investigators "all seems to be related to investigating Mr. Paul with respect to these claims," and therefore within the ambit of the anti-SLAPP statute,[10] "and then beyond that I don't believe it's shown that Mr. Friedman or the investigator did anything such that

[8]All discovery is stayed when a motion to strike is filed under the anti-SLAPP statute. (Code Civ. Proc., § 425.16, subd. (g).) However, the court, "for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." (*Ibid.*)

[9]The court stated: "I don't believe that specific discovery has been identified on the specific facts that need to be elicited to support the claims that have been identified. So, to repeat, I don't believe there is any good cause shown. [¶] Particularly in the moving papers, but even as supplemented by oral argument."

[10]Paul conceded at the hearing that the malicious prosecution claim was within the ambit of the anti-SLAPP statute. The trial court concluded Paul had not shown the probable validity of the claim as to Friedman, "particularly as to the malice element." After Paul's opening brief in this appeal was filed, the Supreme Court decided in *Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310 [105 Cal.Rptr.2d 790, 20 P.3d 1086] that a contractual arbitration is not a prior action that will support a malicious prosecution action. In his reply brief, Paul asked this court to disregard his argument that he had demonstrated a probability of prevailing on that claim.

you've got a prima facie showing."[11] An order reflecting those rulings was filed on July 5, 2000.

Paul appeals from the order insofar as it granted Friedman's special motion to strike and denied his discovery request, and Friedman cross-appeals from the denial of his motion to strike the remaining causes of action and his request for attorney fees.[12]

## DISCUSSION

We conclude that Friedman's special motion to strike Paul's first amended complaint should have been denied as to Paul's claims for intentional infliction of emotional distress, invasion of privacy, and tortious interference with economic relationships, because Friedman did not make a prima facie showing that those claims fell within the ambit of the anti-SLAPP statute. A lawsuit seeking redress for a harassing investigation of topics unrelated to those under consideration in an official proceeding is not the type of "abuse of the judicial process" that the Legislature sought to prevent when it enacted the anti-SLAPP statute. In reaching this conclusion, we express no opinion on the probable merits of any of Paul's claims. We merely conclude that his lawsuit should proceed like any other, and is not subject to anti-SLAPP procedures clearly intended to expose and dismiss abusive lawsuits that chill free speech, but not actions seeking redress for improper investigation of frivolous claims.

We begin with a review of the anti-SLAPP statute and the reasons for its existence, and then proceed to an analysis of the inapplicability of the statute in the circumstances of this case.

*The statute and its background.*

The legal principles governing anti-SLAPP motions, and the reasons for the enactment of the anti-SLAPP statute, have been described in a number of cases. ■■■■ A SLAPP suit is a meritless lawsuit "filed primarily to chill the defendant's exercise of First Amendment rights." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2 [33 Cal.Rptr.2d 446].) The *Wilcox* court explained: "The paradigm SLAPP is a suit filed by a large land developer against environmental activists or a neighborhood association

---

[11]As to the various tort causes of action against Friedman, the court said: "As to the - those various torts, I believe that the SLAPP suit does apply. [¶] And as to a number of them with respect to your attempting to meet the second requirement, I believe the litigation privilege preludes [*sic*] you from proving up these torts . . . ."

[12]An order granting or denying a special motion to strike is immediately appealable. (Code Civ. Proc., § 425.16, subd. (j).)

intended to chill the defendants' continued political or legal opposition to the developers' plans." (*Wilcox v. Superior Court, supra*, 27 Cal.App.4th at p. 815.)[13] "[W]hile SLAPP suits 'masquerade as ordinary lawsuits' the conceptual features which reveal them as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." (*Wilcox v. Superior Court, supra*, 27 Cal.App.4th at pp. 816-817, citing Pring, *SLAPPs: Strategic Lawsuits Against Public Participation* (1989) 7 Pace Envtl. L.Rev. 3, 5-6, 9.)

The Legislature responded to a "disturbing increase" in SLAPP suits by enacting section 425.16 of the Code of Civil Procedure. (Code Civ. Proc. § 425.16, subd. (a).)[14] The legislation explicitly declared that participation in matters of public significance "should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).)[15] Section 425.16 is a procedural remedy designed to eliminate SLAPP's in the early stages of litigation. It permits a special motion to strike a cause of action against a person "arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue . . . ." (*Id.*, subd. (b)(1).)[16] The statute defines an "act in furtherance of a person's right of petition or free speech . . . in connection with a public issue" to include four types of conduct:

Any written or oral statement or writing made before a legislative, executive, judicial or other official proceeding (§ 425.16, subd. (e)(1));

---

[13]"SLAPP suits are brought to obtain an *economic* advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. [Citations.] Indeed, one of the common characteristics of a SLAPP suit is its lack of merit. [Citation.] But lack of merit is not of concern to the plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. [Citation.] As long as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished. [Citations.]" (*Wilcox v. Superior Court, supra*, 27 Cal.App.4th at p. 816.)

[14]All further statutory references are to the Code of Civil Procedure.

[15]Subdivision (a) states as follows: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly." (§ 425.16, subd. (a).)

[16]Subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

Any written or oral statement or writing "made in connection with an issue under consideration or review" by a legislative, executive, or judicial body or other official proceeding (§ 425.16, subd. (e)(2));

Any written or oral statement or writing made in a public place in connection with an issue of public interest (§ 425.16, subd. (e)(3)); and

Any other conduct in furtherance of the exercise of the rights of petition or free speech "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)[17]

To succeed on a motion to strike, the moving defendant must make a prima facie showing that the plaintiff's cause of action arises from an act in furtherance of the defendant's First Amendment rights, that is, from any one of the four types of conduct listed above. (*Wilcox v. Superior Court, supra*, 27 Cal.App.4th at p. 820.) If the defendant does so, the motion to strike will be granted "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

Since the enactment of the anti-SLAPP statute in 1992, its scope has expanded beyond the type of lawsuit described in *Wilcox*'s paradigm SLAPP. In response to cases narrowly construing the statute, section 425.16 was amended in 1997 to clarify the Legislature's intent that its provisions be construed broadly.[18] In 1999, the Supreme Court resolved conflicts among the courts of appeal by holding that any statement or writing "made in, or in connection with an issue under consideration or review by, an official

---

[17]Subdivision (e) reads in full: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

[18]The amendment also added the text of clause (4) of subdivision (e), to specify that the statute applies to "any other conduct" in furtherance of the constitutional right of petition or free speech in connection with a public issue. The provision adding "any other conduct" is explicitly subject to the limitation that the conduct be "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4); *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564].) This contrasts with statements or writings in connection with issues under consideration in an official proceeding, as to which there is no "issue of public interest" limitation, as discussed in the text, *post.*

proceeding or body" is protected by section 425.16, whether or not it involves a public issue. (*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th 1106, 1113.)

Since *Briggs,* courts have applied the anti-SLAPP statute in a number of different factual contexts. (See, e.g., *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 240 [83 Cal.Rptr.2d 677] [media defendants in libel actions are among the prime beneficiaries of § 425.16; the anti-SLAPP statute is not limited to suits by the powerful and wealthy against the impecunious, citing *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 863 [44 Cal.Rptr.2d 46]]; *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568-569 [92 Cal.Rptr.2d 755] [class action claims brought against a drug company for alleged false statements before a regulatory agency were subject to special motion to strike; case remanded for determination whether plaintiffs could establish probability of prevailing on their claims].) The scope of the statute is not without limits, as demonstrated in other cases finding lawsuits were not within its protection. (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365 [102 Cal.Rptr.2d 864] [suit alleging interference with a councilman's candidacy by admittedly illegal campaign contributions was not subject to a motion to strike because campaign money laundering "was not a *valid* activity undertaken by defendants in furtherance of" their free speech rights]; *People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280, 284 [103 Cal.Rptr.2d 71] [defendants failed to make a prima facie showing that a lawsuit was brought to chill their First Amendment rights].)[19]

*Application of the statute to this case.*

In his motion to strike and on appeal, Friedman's position is that all the acts alleged in Paul's complaint arose "in connection with the investigation or prosecution of the underlying arbitration," and therefore fell within the ambit of the anti-SLAPP statute. We conclude Friedman misreads the statute. ■ ■ While we are required to construe the statute broadly, we must also adhere to its express words and remain mindful of its purpose.[20]

Friedman was required to make a prima facie showing that Paul's lawsuit arose from acts implicating Friedman's First Amendment speech

---

[19]The Supreme Court has granted review of the issue whether a defendant seeking to strike an action under the anti-SLAPP statute must show that the action was brought with the intent to chill the defendant's exercise of First Amendment rights. (*Equilon Enterprises v. Consumer Cause, Inc.,* review granted Apr. 11, 2001, S094877.)

[20]The statute "does not apply in every case where the defendant may be able to raise a First Amendment defense to a cause of action. Rather, it is limited to exposing and dismissing

or petition rights as described in one of the four categories stated in the statute.[21] (§ 425.16, subd. (e)(1)-(4); *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1418 [103 Cal.Rptr.2d 174].) None of those categories encompasses, as Friedman asserts, any and all conduct "in connection with [the] securities arbitration proceeding." So far as private arbitration proceedings are concerned, the statute covers, as the Supreme Court observed in *Briggs*, any statement or writing "made in, or in connection with an issue under consideration or review by, an official proceeding or body." (*Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th at p. 1113.) Paul's tort causes of action plainly did not seek redress for any statements of Friedman's "made in" the arbitration or "before" the arbitrators.[22] (§ 425.16, subd. (e)(1).) Paul sought redress for a harassing investigation and disclosures made outside the arbitration. Thus, since the suit does not arise from statements "made before" the arbitral body, Friedman had to show the suit arose from oral statements or writings "made in connection with an issue under consideration or review" in the arbitration. (*Id.*, subd. (e)(2).) A review of Paul's complaint and Friedman's motion to strike makes it clear that Friedman made no such showing.[23]

---

SLAPP suits—lawsuits 'brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances' 'in connection with a public issue.' (§ 425.16, subds. (a), (b).)" (*Wilcox v. Superior Court, supra*, 27 Cal.App.4th at p. 819.)

[21]Paul points out that Friedman's motion to strike was made on the ground that Paul's complaint arose solely from Friedman's actions in diligently pursuing *his clients'* right to petition, not his *own* right to petition. Paul claims in his reply brief that Friedman had no standing to bring a motion to strike on that ground, citing *Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141, 152 [106 Cal.Rptr.2d 843]. In *Shekhter*, the court observed that under the statute, only the person whose exercise of free expression or petition rights resulted in his/her being sued may bring the special motion to strike. In *Shekhter*, however, the court did not address the issue whether a special motion to strike could have been brought by the lawyers based on the exercise of the right to petition as counsel. The court concluded the lawyers were also exercising their own free expression rights, "albeit also on behalf of their clients," when they issued press releases and allegedly disclosed confidential material to broadcasters, etc. (*Shekhter, supra*, 89 Cal.App.4th at p. 153.) We need not decide the issue in this case either, since Paul did not raise the issue in his opening brief.

[22]Nor did Paul's suit assert claims arising from statements or writings made in a public forum in connection with an issue of public interest (§ 425.16, subd. (e)(3)), or from any other conduct of Friedman's "in connection with a public issue or an issue of public interest." (*Id.*, subd. (e)(4).)

[23]Friedman's argument in support of his motion to strike relied almost exclusively on the contention that he had an absolute privilege under Civil Code section 47, subdivision (b), immunizing him and other defendants from all claims based on communications bearing any relationship to the arbitration proceeding. That argument, however, bears only on the issue whether Paul can establish a probability of prevailing on the merits of his claims. And that issue does not even arise unless Friedman first makes a prima facie showing that the acts complained of arose in connection with an issue under consideration by the arbitrators.

In essence, Paul's lawsuit alleged Friedman conducted a harassing investigation that extended far beyond the scope of the issues subject to arbitration. The investigation was allegedly directed to personal matters bearing no relationship to the claims asserted in the arbitration. In the course of the investigation, Friedman or his agents allegedly made disclosures to clients and others about Paul's personal life that likewise had nothing to do with the claims under consideration in the arbitration. Fairly read, the complaint alleges Paul was injured by acts of Friedman's that had no connection to the issues under review in the arbitration.[24]

Friedman's motion to strike, however, rested principally on the ground that *any* conduct in connection with an official proceeding is protected by the statute. As we have already observed, that view is erroneous. The statute does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding. The statements or writings in question must occur in connection with "an issue under consideration or review" in the proceeding. The necessity of a connection to an issue under review in a proceeding, and not merely to a proceeding, is illustrated in *People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc., supra,* 86 Cal.App.4th 280.

In *20th Century Insurance,* an insurance company's lawsuit alleged a defendant prepared and used false and fraudulent damage reports and repair estimates for clients submitting claims to the insurer for earthquake damage. Defendant moved to strike the suit, arguing those allegations implicated its right to petition. The defendant's declaration in support of the motion stated the reports were prepared for submission to clients and their legal counsel, the majority of them were prepared in anticipation of litigation, and they often became the subject of discovery requests in pending lawsuits. The court concluded the defendant failed to make a prima facie showing the lawsuit was brought to chill their First Amendment rights, even though "some of the reports eventually were used in official proceedings or litigation," because they were not created in connection with an issue then under consideration or review in an official proceeding. (86 Cal.App.4th at pp. 284-285.) The court said: "[T]he damage reports were sent to 20th Century Insurance to demand performance on the insurance contract. At the time defendants created and submitted their reports and claims, there was no 'issue under consideration' pending before any official proceeding. If we

---

[24]Each cause of action that is the subject of a special motion to strike must be analyzed separately. Our discussion in this part of the opinion refers exclusively to Paul's causes of action for intentional infliction of emotional distress, invasion of privacy, and tortious interference with economic relationships. Paul's claim for breach of a confidentiality agreement is considered, *post,* in connection with Friedman's cross-appeal.

protect the reports and claims under section 425.16 because they eventually could be used in connection with an official proceeding, we would effectively be providing immunity for any kind of criminal fraud so long as the defrauding party was willing to take its cause to court. Defendants have cited nothing to us that demonstrates the anti-SLAPP law embraces such actions." (*Id.* at p. 285.)

The circumstances in this case are analogous. The reports in *20th Century Insurance* were avowedly prepared in anticipation of litigation, and indeed in some cases were actually used in litigation.[25] The litigation nexus alone, however, was not sufficient to establish that the reports were "in connection with an issue under consideration" in an official proceeding. In *20th Century Insurance*, an issue actually addressed by the reports was not, at the time, under consideration in an official proceeding. In this case, the intrusive prehearing investigation of and disclosures concerning Paul's personal life— the subject of the lawsuit—were unrelated to any issue under consideration in the arbitration. In short, it is insufficient to assert that the acts alleged were "in connection with" an official proceeding. There must be a connection with an issue under review in that proceeding. In *20th Century Insurance*, there was a connection to an issue but no pending proceeding; here, there is a pending proceeding, but no connection to an issue before the tribunal.[26]

Friedman contends that during the arbitration (a) he argued that Paul's judgment was impaired, and (b) the panel permitted testimony about Paul's conviction for driving under the influence and other "distractions" in Paul's personal life.[27] However, a lawyer's attempt to inject an issue into a proceeding does not render the issue relevant, nor can the attempted injection of

---

[25]In *Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th 1106, the Supreme Court observed that courts considering the question have concluded that communications preparatory to or in anticipation of litigation are entitled to the benefits of section 425.16. (*Briggs*, at p. 1115, citing, e.g., *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830].)

[26]In addition to pointing out the complaint was predicated on activity outside the scope of the arbitration, Paul argues in his reply brief that Friedman's conduct was unethical, and unethical conduct is not constitutionally protected. Paul cites *Paul for Council v. Hanyecz, supra*, 85 Cal.App.4th 1356, in which the court held the defendants could not, as a matter of law, make a prima facie showing that the anti-SLAPP statute applied. This was because campaign money laundering, the activity of which the plaintiffs complained, was concededly illegal, and therefore "was not a *valid* activity undertaken by defendants in furtherance of" their free speech rights. (*Id.* at p. 1365.) In this case, the question whether Friedman's conduct was unethical was not conceded, or even argued, and so cannot form the basis for a determination that the statute does not apply. (See *Paul for Council, supra*, 85 Cal.App.4th at p. 1367.)

[27]The evidence presented with Friedman's motion to strike consisted of his own declaration, together with a copy of 24 pages from the transcript of the arbitration. Those pages

an irrelevant matter transform it into an issue "under consideration or review" in the proceeding. By definition, irrelevant matters have no tendency in reason to prove or disprove any disputed fact of consequence to the determination of a matter, and are specifically excluded from consideration.[28] Irrelevant matters thus are not "under consideration or review" in an official proceeding. Nor does the arbitration panel's willingness to listen to irrelevant matters bear on whether those matters were "under consideration or review" by the arbitrators. The arbitrators were not bound by the rules of evidence.

Accordingly, we conclude the evidence Friedman presented with his motion to strike did not amount to a prima facie showing that his allegedly harassing investigation and related personal disclosures were in connection with or related to "an issue under consideration or review" by the arbitrators. Indeed, all the evidence was to the contrary. The issues actually under review by the arbitrators bore no relationship to the allegations in Paul's lawsuit. The statement of claim in the arbitration makes no allegations of "impaired judgment" or "distractions" causing damage to the claimants.[29] The arbitral decision is likewise barren of any mention of any such claims or arguments, either in the statement of "issues for resolution" or elsewhere. Indeed, the decision explicitly determined that even the claims under consideration were "frivolous," had "no factual foundation," and "were intended to harass" Paul and CIBC Oppenheimer.

It would be ironic indeed if activity remotely connected to a frivolous arbitration proceeding were protected by a statute specifically enacted to prevent the chilling of First Amendment rights through abuses of the judicial process. (§ 425.16, subd. (a).) Fortunately, there is no such irony in this case, because Friedman did not make the necessary prima facie showing his activity came within the protection of the statute. That being so, it is

---

covered 10 minutes or so of Friedman's cross-examination of Paul, out of 26 days of hearings. The transcript supports the view of Paul's counsel that the arbitrators were not interested in Friedman's theory that Paul's judgment was impaired by distractions in his personal life. "ARBITRATOR TAMOUSH: . . . 'But if your allegation is distractions caused problems, I guess we have to hear them.' " The chair ended the examination after 10 minutes.

[28] See Evidence Code sections 210, 350.

[29] The introductory paragraph includes the allegation that "[r]espondents . . . were negligent," but the only specific negligence alleged is that CIBC Oppenheimer's failure to supervise Paul allowed his wrongdoing to occur. In addition to compensatory damages, claimants requested a finding that Paul was "guilty of fraud, intentional or reckless misrepresentation and breach of fiduciary duties, and award punitive damages in a sufficient amount to deter wrongdoing." All of the allegations in the statement of claim, except the one involving speculative limited partnerships, involved claims of fraudulent activity by Paul.

unnecessary to determine whether Paul established the probable validity of his claims.[30]

*Friedman's cross-appeal.*

█ Friedman cross-appeals from the trial court's order denying his motion to strike Paul's causes of action for breach of the confidentiality agreement and injunctive relief. We find no error.

In the proceeding Paul brought to confirm the arbitration award, Friedman filed opposing declarations. Those declarations breached a confidentiality agreement by revealing a mediator's evaluation of the arbitration claims. Friedman does not contend an absence of a breach. Instead, he argues the statements made in the declarations he submitted were covered by the litigation privilege. They were not. (*ITT Telecom Products Corp. v. Dooley* (1989) 214 Cal.App.3d 307, 320, 319 [262 Cal.Rptr. 773] [defendant was not privileged under Civ. Code, § 47, former subd. 2, to voluntarily breach an express confidentiality agreement; also observing "it is possible to waive even First Amendment free speech rights by contract"].) Nor are there any exceptions to the confidentiality of mediation communications or to the statutory limits on the content of mediators' reports. (*Foxgate Homeowners' Assn., Inc. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 4 [108 Cal.Rptr.2d 642, 25 P.3d 1117].) Paul has clearly established a probability he will prevail on the claim, regardless of whether it was otherwise subject to a special motion to strike.[31]

## DISPOSITION

The order is reversed insofar as it granted Friedman's motion to strike the causes of action for intentional infliction of emotional distress, violation of the right to privacy, and interference with economic advantage. The order is affirmed insofar as it denied Friedman's motion to strike the causes of action for breach of the confidentiality agreement and injunctive relief and denied Friedman's request for attorney fees. The cause is remanded for further proceedings. Paul is to recover his costs on appeal.

Johnson, Acting P. J., and Woods, J., concurred.

A petition for a rehearing was denied February 26, 2002, and the petition of appellant Michael E. Friedman for review by the Supreme Court was denied May 15, 2002.

---

[30]In view of our conclusion, we need not consider Paul's appeal of the denial of his request for discovery.

[31]In view of our disposition of the issues on appeal and cross-appeal, there is no basis for Friedman's claim that he was entitled to attorney fees under section 425.16, subdivision (c).