Filed 7/1/24  Petersen v. Feldman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MICHAEL PETERSEN, | |
| Plaintiff and Appellant, | E081825 |
| v. | (Super.Ct.No. CVPS2302429) |
| STEPHEN MARK FELDMAN, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Manuel Bustamante, Judge.  Affirmed.

Michael Petersen, in pro per., for Plaintiff and Appellant.

Law Offices of Mark E. Goodfriend and Mark E. Goodfriend, for Defendant and Respondent.

Michael Petersen brought this action against Stephen Feldman for libel and invasion of privacy. Feldman is an attorney, and Petersen bases his complaint on a letter that Feldman sent on behalf of a client. Feldman filed a special motion to strike the complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] (Unlabeled statutory citations refer to the Code of Civil Procedure.) The trial court granted the anti-SLAPP motion. We affirm.

## BACKGROUND

I.    *Allegations of the complaint*

According to Petersen's complaint, he pled no contest to unspecified offenses for events that occurred in 1986, and he served a prison term from late 1989 to April 1992. He opened his own business, Diversified Arbitration, in 1993, and he obtained a certificate of rehabilitation in 1999. Since 2006, he has been a licensed private investigator and has passed extensive state and federal background checks.

From 2014 to 2017, Petersen was the victim of a real estate scam perpetrated by Ahron Zilberstein. Petersen owned commercial real property in Los Angeles County, and Zilberstein filed six frivolous actions against Petersen to force him into selling the property for hundreds of thousands of dollars under market value. Feldman represented Zilberstein in five of those actions. Feldman learned about Petersen's background through the discovery process in those actions. Specifically, Feldman learned about

---

[1]    "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

Petersen's criminal history and imprisonment, certificate of rehabilitation, founding of Diversified Arbitration, and licensure as a private investigator.

Petersen discovered that Zilberstein had scammed hundreds of other victims. In early 2016, Petersen bought a domain name from GoDaddy and formed the website "ahronzilberstein.com," which he used to publicize legal filings, judgments, and sanctions orders against Zilberstein. Feldman sent a letter to GoDaddy in his capacity as Zilberstein's attorney in April 2016. The letter was written on the letterhead of Feldman's law office and stated that Feldman represented Zilberstein. The subject line of the letter read, "Demand to Cancel Unauthorized Registration." The letter stated that Petersen "ha[d] or might have" registered the domain name "'ahronzilberstein.com.'" It further stated that the registration was accomplished without Zilberstein's knowledge or consent.

More than two years after the GoDaddy letter, in November 2018, Zilberstein filed a lawsuit against Petersen to force him to shut down the website (the website action) (L.A. Super. Ct., No. 18vecv00182). Feldman again represented Zilberstein.

The trial court in the website action granted Petersen's motion for summary judgment in April 2023, and Zilberstein moved for reconsideration of that order. Feldman submitted a declaration in support of the motion for reconsideration. According to the declaration, Feldman had spent 10 hours or more "dealing with legal issues in connection with Mr. Petersen's website" that were not investigation or preparation for the website action. Feldman cited as an example the time that he had spent attempting to convince GoDaddy to take down the website, including the letter that he sent to GoDaddy

3

in April 2016. He attached the GoDaddy letter as an exhibit to his declaration. (Both Feldman's declaration and the GoDaddy letter are exhibits to Petersen's complaint in this case.)

Petersen first learned of the GoDaddy letter when Feldman attached it to his declaration and filed it in the website action. Feldman and Zilberstein actively concealed the letter from Petersen by failing to produce the letter during discovery in the website action.

Petersen bases the complaint in this matter on the following statements in the GoDaddy letter:

- Petersen has "a colorful background, including but not limited to being a convicted felon" who "served 10 years in prison."

- The domain name registration was "part and parcel of an avowed 'shakedown' attempt by Mr. Petersen of Mr. Zilberstein."

- Feldman knew of no "motive on behalf of Mr. Petersen [other] than malice, avarice and greed as evidenced by Mr. Petersen's attempted extortion of Mr. Zilberstein."

- GoDaddy should "take the appropriate action to shut down Mr. Petersen's nefarious activity."

- If GoDaddy did not cancel the domain name registration, the company was "in effect complicit in and actively participating [in], profiting [from], and cooperating in a theft and serious misuse of Mr. Zilberstein's name."

4

Petersen alleges that the foregoing statements were false and defamatory or disclosed private facts from his distant past. On that basis, the complaint alleges causes of action for libel, libel per se, invasion of privacy for public disclosure of private facts, and invasion of privacy for placing Petersen in a false light.

II.     *The anti-SLAPP motion*

Feldman moved to strike the entire complaint under the anti-SLAPP statute (§ 425.16). He argued that the GoDaddy letter constituted protected activity because he filed the letter with his declaration in the website action, rendering the letter a "written or oral statement made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(2).) He also argued that Petersen's claims had no merit because the litigation privilege (Civ. Code, § 47, subd. (b)) applied to the GoDaddy letter. Feldman asserted that he sent the letter to GoDaddy to determine who registered the domain name, prevent the registration from going forward, and advise GoDaddy of its complicity in invasion of privacy claims. He argued that the letter therefore was investigation and preparation for litigation, and he ultimately filed litigation against Petersen.

Feldman submitted a declaration in support of the anti-SLAPP motion, stating that the letter to GoDaddy had several purposes. He was not absolutely certain that Petersen had registered the domain name (ahronzilberstein.com), and he wanted to confirm that. He also wanted to persuade GoDaddy to investigate Petersen's use of the domain name and persuade the company that Petersen should be prevented from using it. GoDaddy had dispute resolution methods and procedures for resolving domain name disputes.

5

Further, Feldman advised GoDaddy that if it did not prevent Petersen's use of the domain name, GoDaddy "would be complicit with Petersen." Feldman knew that Petersen had been convicted of at least four felonies and had spent time in prison. He believed that Petersen had been sentenced to 10 years in prison. He mentioned Petersen's criminal history to give GoDaddy public information that might have been useful in its investigation and decision to prevent Petersen from using the domain name. The website action against Petersen alleged a violation of Business and Professions Code section 17525 (bad faith registration of another person's name as a domain name). Feldman submitted the GoDaddy letter in the website action to demonstrate that Zilberstein had incurred economic damages (legal fees) caused by Petersen's registration of the domain name.

Petersen opposed the anti-SLAPP motion. He argued that the GoDaddy letter was not a "statement made in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subd. (e)(2)), because Feldman admitted in his declaration in the website action that the GoDaddy letter did not constitute investigation or preparation for that litigation. Petersen's declaration in support of his opposition stated that he was not sentenced to and did not serve 10 years in prison. He also stated that he informed Feldman of his purpose in forming the website—to educate and protect the general public. He was not engaged in a shakedown of Zilberstein and had not attempted to extort Zilberstein. Feldman had exhibited "an extreme amount of malice" toward Petersen throughout their litigation history, frequently calling Petersen a crook or a criminal and threatening Petersen with physical harm.

6

In his reply brief, Feldman argued that the GoDaddy letter was protected activity because the statements were in connection with a dispute that ripened into litigation. Feldman's declaration in support of the reply brief reiterated that he sent the GoDaddy letter to persuade the company not to host the website, and he said that he was contemplating litigation against Petersen in good faith when he sent the letter.

The trial court granted Feldman's anti-SLAPP motion. It concluded that the GoDaddy letter constituted protected activity because the letter was sent in anticipation of litigation against GoDaddy. Although the letter did not expressly threaten legal action against GoDaddy, the letter "stated that if [GoDaddy] did not cancel the website's registration, it would be complicit in the theft and misuse of Zilberstein's name," and the letter "implied [GoDaddy] would be liable for the tort of invasion of privacy if it did not take the demanded action." The court also ruled that Petersen had not shown a probability of success on his claims. The court concluded that Petersen offered no relevant evidence to support his claims and relied solely on his complaint. Moreover, even if he had offered evidence, the litigation privilege protected the GoDaddy letter and thus defeated Petersen's claims.

DISCUSSION

Petersen argues that Feldman did not carry his threshold burden of showing activity protected by the anti-SLAPP statute. He also argues that the litigation privilege does not apply to the GoDaddy letter. We conclude that Petersen fails to show that the trial court erred.

7

"The anti-SLAPP statute enables courts, early in litigation, to strike meritless claims in lawsuits when those claims risk chilling 'continued participation in matters of public significance.' (§ 425.16, subd. (a); see *id.*, subds. (b)(1), (f).) 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (*Id.*, subd. (b)(1).) Thus, when a defendant seeks to strike a plaintiff's claim under the anti-SLAPP statute there are two inquiries: First, does the claim call for the anti-SLAPP statute's protections? Second, if so, does it have sufficient merit?" (*Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 871.) The defendant bears the burden of establishing that a challenged claim arises from activity protected by the anti-SLAPP statute. (*Id.* at p. 872.) If the defendant makes that showing, then the burden shifts to the plaintiff to establish that the challenged claim has sufficient merit. (*Ibid.*)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) We conduct the same two-step analysis as the trial court to determine whether the challenged claims arise from protected activity, and if so, whether the plaintiff has shown a probability of prevailing on the merits. (*Ibid.*; *Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1018.) "We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.'" (*Soukup v. Law Offices of Herbert Hafif*

8

(2006) 39 Cal.4th 260, 269, fn. 3, quoting § 425.16, subd. (b)(2).) We do not assess credibility or the weight of the evidence. (*Ibid.*) Instead, we "'accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'" (*Ibid.*)

I.       *Step one:  protected activity*

"The anti-SLAPP statute identifies four categories of protected activity. (§ 425.16, subd. (e)(1)-(4).)" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) The trial court determined that the GoDaddy letter fell within subdivision (e)(2) of section 425.16, which protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."

"[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266 (*Neville*).) Subdivision (e)(2) of section 425.16 protects communications in connection with pending litigation but also "'communications preparatory to or in anticipation of'" litigation. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; accord *Neville*, at p. 1268.) "Prelitigation letters demanding that a party cease from doing certain acts or be subject to a lawsuit based on that conduct are in preparation or anticipation of litigation and fall within the protection of section 425.16, subdivision (e)(2) . . . ." (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 472 (*Lunada*).)

9

Petersen argues that Feldman admitted under penalty of perjury in the website action that the GoDaddy letter was not preparation for the website action, so subdivision (e)(2) of section 425.16 does not apply. But the court determined that the letter was in anticipation of litigation against GoDaddy, not the website action. The record supports the court's conclusion. The letter was written on the letterhead of Feldman's law office and stated that Feldman represented Zilberstein. Feldman demanded that GoDaddy cancel Petersen's unauthorized registration of the domain name in Zilberstein's name. Feldman also observed that California law provides a cause of action for invasion of privacy, and it stated that if GoDaddy did not cancel the registration, then GoDaddy would be "complicit in and actively participating" in Petersen's "theft and serious misuse" of Zilberstein's name. Those statements implied that GoDaddy would be subject to a lawsuit if it did not cancel the registration. The letter thus was a prelitigation communication demanding that GoDaddy cease doing certain acts or be subject to a lawsuit. (*Lunada*, *supra*, 230 Cal.App.4th at p. 472.)

Petersen further argues that the court erred because the statements that he served 10 years in prison and was engaged in a shakedown, attempted extortion, and nefarious activity are irrelevant to the issues under consideration or review in the website action or any potential claim against GoDaddy. The argument lacks merit.

The statements about a shakedown, extortion, and nefarious activity were relevant to the website action against Petersen. The cause of action under Business and Professions Code section 17525 requires Zilberstein to show that Petersen acted with "a

10

bad faith intent" in registering the domain name. (Bus. & Prof. Code, § 17525, subd. (a).) The statements related to whether Petersen had that bad faith intent.

In addition, the characterization of Petersen's activity and his claimed motives were relevant to persuading GoDaddy that it should investigate Petersen's use of the domain name and prevent him from using it, or the company would face a lawsuit for "complicit[y]" in Petersen's claimed misuse of the name. The statements therefore "constituted an attempt to prevent further misuse" of the domain name and "thereby mitigate [Zilberstein's] potential damage." (*Neville*, *supra*, 160 Cal.App.4th at p. 1268.) In that way, the statements were relevant to any claim against GoDaddy or Petersen.

The statement that Petersen was a convicted felon who had served 10 years in prison was relevant because it went to Petersen's credibility. Evidence of prior felony convictions is admissible in civil actions "[f]or the purpose of attacking the credibility of a witness." (Evid. Code, § 788; *Robbins v. Wong* (1994) 27 Cal.App.4th 262, 274.) Petersen would be a witness in any action against him or GoDaddy for the claimed misuse of the domain name. And even if the prior convictions were not admissible in court under the Evidence Code, the information still would be relevant to GoDaddy's consideration of Petersen's credibility in any internal investigation of the domain name registration.

Petersen also suggests that the court erred because it "ignored" two cases that analyzed whether statements were sufficiently related to issues in the underlying litigation. Those cases are *Paul v. Friedman* (2002) 95 Cal.App.4th 853 (*Paul*) and *Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140 (*Nguyen*). There is no

11

basis in the record to presume that the trial court failed to consider *Paul* and *Nguyen.* Both cases were discussed at length in *Neville*, the case on which the court relied in its ruling. (*Neville*, *supra*, 160 Cal.App.4th at pp. 1264, 1267-1268.) In any event, although Petersen summarizes *Paul* and *Nguyen*, he does not explain why they are analogous to this case. Neither case shows that the trial court erred.

In *Paul*, the court held that statements about a securities broker's personal financial affairs and his claimed substance use were irrelevant to any issue under review in an arbitration proceeding against him, which alleged securities law violations, breach of fiduciary duty, fraud, and negligence. (*Paul*, *supra*, 95 Cal.App.4th at pp. 857, 866-868.) The court rejected the argument that the information was relevant to show that the broker was impaired and distracted while performing his duties. (*Id.* at pp. 858-859, 868.) The arbitration claim "ma[de] no allegations of 'impaired judgment' or 'distractions' causing damage to the claimants," and the arbitration decision did not "mention . . . any such claims or arguments." (*Id.* at p. 868.) The defendant therefore failed to show that the statements were protected by subdivision (e)(2) of section 425.16. (*Paul*, at p. 868.) In contrast, most of the challenged statements here went to the heart of the domain name dispute in that they addressed Petersen's claimed improper motives for registering the name. And as already discussed, the statement about Petersen's criminal record was relevant to his credibility. Nothing in *Paul* compels a different conclusion.

*Nguyen* was a litigation privilege case. The privilege applies to communications that have "'some reasonable relevancy to the subject matter of'" litigation. (*Nguyen*, *supra*, 69 Cal.App.4th at p. 147.) The case involved a dispute between an employer and

its former employee (Nguyen), who was allegedly soliciting customers to switch their business to his new employer. (*Id.* at pp. 143-144.) In a letter from the former employer to the new employer, the former employer accused Nguyen of unfair competition and falsely stated that Nguyen had served prison time for "'repeatedly and violently assaulting his wife.'" (*Id.* at p. 144.) The court held that the statement about Nguyen's criminal record was not reasonably relevant to the unfair competition dispute. (*Id.* at p. 151.) First, the statement was false: Nguyen was convicted of shooting at an unoccupied car and vandalism, not assaulting his wife, and he served time in jail, not prison. (*Ibid.*) Second, any connection to the unfair competition dispute was tenuous, because "one's proclivity to engage in [unfair business] practices is in no way, shape or form predictable by whether he (a) beats his wife, (b) shoots at unoccupied cars, or (c) commits vandalism." (*Ibid.*) Third, the court rejected the argument that Nguyen's criminal convictions would be relevant to impeach his credibility if he became a witness. (*Ibid.*) It concluded that the connection to his credibility was also tenuous. (*Ibid.*) The court observed that trial courts have discretion to exclude prior felony convictions under Evidence Code section 352. (*Nguyen*, at p. 151.) In addition, the court reasoned that it "stretche[d] credulity to the breaking point to believe" that the former employer mentioned the alleged "wife beating" because it wanted to advise the new employer that Nguyen's credibility might be subject to impeachment. (*Ibid.*) The court concluded that the reasonable interpretation of the letter, and "possibly the only reasonable interpretation" of the letter, was that "it was essentially 'vindictive' behavior" by the former employer. (*Id.* at p. 152.)

*Nguyen*'s reference to Evidence Code section 352 does not persuade us that prior felony convictions are irrelevant to a witness's credibility. As already explained, the Evidence Code establishes that they are relevant for that purpose. (Evid. Code, §§ 210, 788.) And a court's decision to exclude evidence under Evidence Code section 352 does not mean that the evidence is irrelevant. The section merely permits the court to exclude otherwise relevant evidence if its probative value is outweighed by other factors. (Evid. Code, § 352; see *People v. Castro* (1985) 38 Cal.3d 301, 307 [Evidence Code section 352 applies "to all relevant evidence"].) Moreover, the *Nguyen* court's conclusion about the vindictiveness of the former employer does not show error here. The statement that Nguyen had repeatedly and violently assaulted his wife was particularly inflammatory and gave rise to a reasonable inference of vindictiveness. The GoDaddy letter was restrained by comparison—it stated that Petersen was a convicted felon but did not describe his crimes at all.

For all of these reasons, Petersen fails to show that the court erred by concluding that the GoDaddy letter was protected activity under subdivision (e)(2) of section 425.16.

II. *Step two: probability of prevailing*

To establish a probability of prevailing on the merits, "'the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89.) "[T]he plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial. [Citation.] Thus, declarations may not be based upon

14

'information and belief' [citation,] and documents submitted without the proper foundation are not to be considered." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

The plaintiff must also show a probability of prevailing on any substantive defenses that the defendant raises, such as the litigation privilege. (*Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1006.) The litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings (2) by litigants or other participants authorized by law (3) to achieve the objects of the litigation and (4) that have some connection or logical relation to the action. [Citation.] The privilege is 'not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'" (*Id.* at pp. 1006-1007.) The privilege immunizes defendants from almost all tort liability. (*Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 333.)

Petersen argues that the court erred by concluding that the litigation privilege applies to the GoDaddy letter. But the court concluded that Petersen had not shown a probability of prevailing for two independent reasons. First, he offered no evidence to show a probability of prevailing on the merits. Second, even if he had offered such evidence, the litigation privilege would defeat his complaint. Petersen does not address the court's first determination about the lack of evidence. He therefore fails to carry his burden of showing that the court erred, and we need not address his arguments regarding the litigation privilege. (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 969 ["We presume the superior court's order is correct, and the appellant must affirmatively show

15

error]; *ibid.* [it is not the appellate court's role to "scour the record and make" the appellant's arguments for him].)

DISPOSITION

The order granting Feldman's anti-SLAPP motion is affirmed.  Feldman shall recover his costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ\
J.

We concur:

MILLER\
Acting P. J.

CODRINGTON\
J.