Filed 4/15/24; Certified for Publication 5/9/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ROBERT BASSI, | H049873 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 2012FL009065) |
| v. | |
| SUSAN BASSI, | |
| Defendant and Appellant. | |

**THE COURT**[1]

Susan Bassi appeals the denial of her anti-SLAPP motion[2] to strike a petition for a domestic violence restraining order (DVRO) brought by her ex-husband, Robert Bassi.[3] Robert filed the petition for DVRO in response to a series of e-mails from Susan that he contends were harassing, disturbed his peace, interfered with his business, and affected his standing in the community. Susan asserts the e-mails are protected free speech and

---

[1] Before Danner, Acting P. J., Wilson, J., and Bromberg, J.

[2] An anti-SLAPP motion is "a special motion to strike a 'strategic lawsuit against public participation (SLAPP).' " (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 773–774.)

[3] We refer to the parties by their first names for clarity. (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

litigation correspondence informing Robert of her intent to file an "agricultural racketeering RICO"[4] action against him and others.

The trial court denied Susan's anti-SLAPP motion after deciding that several of the e-mails were not privileged or protected speech, and Robert had demonstrated a likelihood of prevailing on the merits of his DVRO petition. We affirm the order.

## I. FACTS AND PROCEDURAL BACKGROUND[5]

A. *Petition For Domestic Violence Restraining Order*

This appeal arises from a DVRO petition filed toward the end of a protracted and contentious marital dissolution between Susan and Robert. In 2018, the trial court entered judgment in the marital dissolution; this court affirmed the judgment in 2023.[6]

In 2021, Robert filed a petition for DVRO (hereafter, petition) and obtained a temporary restraining order against Susan. The petition indicated that Robert and Susan were previously married, had initiated a divorce action in 2012, and that Susan was previously declared a vexatious litigant by the superior court.

The 2021 petition cited a "barrage" of e-mail communications from Susan as the basis of the requested restraining order. Robert asserted, "Susan Bassi has been harassing me for months by email, disturbing my peace, and interfering with my business. The harassing emails make accusations that I have engaged in criminal acts, fraud, vast

---

[4] Susan states she is bringing a federal action against Robert and others under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 et seq.).

[5] We draw the following facts from the pleadings and supporting declarations submitted in the trial court. We accept Robert's factual assertions as true for the purpose of resolving whether the trial court erred in denying Susan's anti-SLAPP motion and consider only whether any contrary evidence from Susan establishes her entitlement to prevail as a matter of law. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 754 (*Laker*).)

[6] A panel of this court affirmed the judgment in an unpublished opinion (*In re the Marriage of Bassi* (June 22, 2023, H046284)), and the California Supreme Court denied review (*Marriage of Bassi* (Sept. 13, 2023, S281233)).

2

conspiracies, and threaten me directly.  The emails are often copied to business associates and customers, subjecting me to contempt, ridicule, and lost opportunities.  My lawyer asked [the] lawyer for Susan Bassi to stop with the harassing emails and all she did was step up the number of harassing emails."

Robert contended that the e-mails served "no legitimate purpose" because he and Susan were each represented by counsel and there was no need for her to personally contact him.  He interpreted the e-mails as threats, including statements about Robert's girlfriend (calling her a " 'RICO bookkeeper' "), and statements accusing Robert of involving his and Susan's children and grandchildren and of being "an 'AG mob boss,' " likening him to "Bernie Madoff," and telling him that his " 'window is narrow' " and he " 'will have to answer for [his conduct].' "

The petition included copies of e-mails sent by Susan to Robert in June and July 2021,[7] which he asserted were "just the recent emails."

B.  *Special Motion to Strike DVRO Petition (Anti-SLAPP Motion)*

The trial court continued the hearing on the petition to allow for proper service on Susan, during which time Susan filed a substitution of attorney to represent herself.  She subsequently filed a notice of limited scope representation identifying attorney Patrick Evans, her attorney for the future RICO action, as her attorney for purposes of the DVRO petition. On October 25, prior to the scheduled DVRO hearing, Susan filed the anti-SLAPP motion at issue in this appeal (motion).

The motion alleged that Robert filed the petition not to protect himself from harassment but to "suppress and punish his ex-wife [Susan]'s exercise of free and litigation privileged speech."  Susan asserted that Robert sought to restrain her from "voicing claims that he and co-conspirators engage in racketeering to produce and sell counterfeit seed used to grow phony 'organic' lettuce for consumers"—conduct she

---

[7] Unless otherwise indicated, all dates were in 2021.

argued was of great public interest because "it cheats seed patent holders out of intellectual property and defrauds consumers into believing they are buying 'organic.' " The motion claimed that it was not harassment that prompted the petition, which was filed "months" after the purportedly offending e-mails, but rather "Robert's alarm at Susan's fact-based RICO complaint" of which she had informed Robert and his family law counsel, Carlos Martinez. Susan argued that Robert never designated an attorney to receive communications about the forthcoming RICO action, and because Martinez refused to receive any communications from Susan's attorney related to her proposed RICO action and blocked those e-mails, her only option was to contact Robert directly.

On the merits, the motion maintained as to the first step of the anti-SLAPP analysis that the e-mails to Robert consisted of speech related to litigation and made before government agencies, including law enforcement and executive agencies such as "the USDA, the IRS, the CCOF [organic certification], and the SEC." The motion identified the litigation to which the e-mails related as "seed RICO."

For each e-mail identified in Robert's petition, Susan sought to explain the "seed RICO" litigation-related purpose of the communication, acknowledging the e-mails would otherwise "seem 'off topic.' " She argued that each of the e-mails pertained to the forthcoming RICO action—for example, by informing Robert of information related to the RICO draft complaint, suggesting that he keep the RICO matter confidential and avoid involving their children and grandchildren, and asserting she had evidence that "tied" Robert's girlfriend to the alleged racketeering and made her a target defendant. Susan also claimed that her communications were protected speech because she is an investigative journalist who reports to the public on agricultural topics, and that Robert's petition seeks to discredit her and "restrain journalistic inquiry."

As to the second prong of the anti-SLAPP analysis, the motion asserted that the petition cannot prevail as a matter of law because Robert has not shown the e-mails constituted "abuse" within the meaning of the applicable restraining order statute and

4

moreover, cannot show that her speech was not protected by the litigation privilege. The motion characterized Robert's declaration that he is "disturbed" by the "seed RICO" allegations as an "adoptive admission of RICO charges," the truth of which, according to the motion, Robert has not denied.

The motion included the declarations of Susan and Evans (Susan's limited scope attorney for the proposed RICO action and petition), exhibits, and a series of evidentiary objections to the statements set forth in Robert's declaration in support of his petition. The exhibits included a copy of a revised draft RICO complaint, which Evans had sent to Robert's attorney Martinez, and copies of Evans's correspondence to Martinez and to counsel for one of the target corporate defendants in the proposed RICO action.

Evans's declaration stated that he is Susan's attorney investigating the agricultural racketeering scheme, is "skilled at assessing how individuals and firms are conducting themselves unlawfully but covering with a legitimate business façade," and based on his review and due diligence "contend[s] there is basis for probable cause to believe that the claims and allegations in the discussion draft RICO complaint . . . are true." Evans's declaration summarized the basis for the draft seed RICO case, which alleges that Robert and others are engaged in the manufacture and sale of counterfeit stock seed sold as " 'organic' " seed, in alleged violation of federal law and state and local trade association regulations.

In her declaration, Susan described the seed businesses that she and Robert had formed, her prior consulting work in organic seed and agriculture, her discovery of the "racket," and Robert's purported efforts through the decade of divorce proceedings to "completely shut [her] out from knowing about or investigating the businesses." Susan declared that after gaining access to certain books and records through the divorce proceedings in 2014, she learned of transactions that concerned her but was barred from reporting on the alleged tax and regulatory violations by the appointed discovery referee in the divorce case. Susan further declared that various family court orders denied her

access to the " 'double books' for seed RICO that [she] believe[s]" Robert's girlfriend "maintains for the RICO enterprise." Susan asserted that through her preparation of the "seed RICO allegations," she filed complaints to government agencies including the USDA and SEC, reported her concerns to law enforcement, and engaged with the IRS about tax issues, leading the IRS to request a copy of her draft RICO complaint. Susan asserted that she "will file the seed RICO federal complaint."

Robert filed written opposition to the anti-SLAPP motion and requested an award of attorney fees and costs. Robert objected to the declarations of Susan and Evans "in their entirety" on grounds including lack of relevance or foundation, hearsay, and "argumentative nonsense that is at best merely conclusory rather than stating any actual facts based on personal knowledge." Robert contended that speech that violates the Domestic Violence Prevention Act (DVPA) under Family Code sections 6203 and 6320—which together define "abuse" to include conduct that " 'destroys the mental or emotional calm of the other party' "—is not protected speech. Robert argued that the e-mails could not qualify as prelitigation communications due to the lack of factual foundation for the proposed RICO action, which he maintained Susan had threatened in order to exact a settlement from him in the dissolution matter. Robert pointed to case authority clarifying that threats to commence litigation are not privileged if made only as a means of inducing settlement of a claim and not in good faith contemplation of a lawsuit. Robert further contended that even if Susan were able to show the e-mails were protected litigation speech, his DVRO petition claims are sufficient to prevail. Robert asserted that the grant of a temporary restraining order demonstrates he "has already made a legally and factually sufficient case as a matter of law."

Robert submitted a declaration in support of the opposition. He responded to the facts asserted by Susan and Evans and declared them to be wildly speculative and lacking any factual basis. Robert explained his seed farming business, methods for growing (multiplying) stock seed provided by customers, and reasons that the claimed "seed

6

RICO allegations" involving the " 'manufacture' " of " 'counterfeit' " seeds exhibited a lack of knowledge of the seed farming industry and of the relationship between seed growing and organic farming.  Robert addressed statements regarding his girlfriend and asserted she does not have access to the financial records and has never worked for him or his businesses as a "bookkeeper."  He declared that Susan has been pressing her RICO theories on him "for at least a year" and though he is unconcerned about the "phony lawsuit" intended for federal court, he is seeking DVRO protection to stop her harassment of him.  Martinez, Robert's counsel, also submitted a declaration in support of the opposition to the anti-SLAPP motion and in support of Robert's request for attorney fees and costs.

Susan filed a reply brief in further support of her anti-SLAPP motion.  She contended that Robert "admits that the communications are meant to exact settlement" and argued that he offers no authority that settlement communications "are sufficient for a DVRO."  She likewise contended that Robert had not demonstrated that speech "on the national news topic of agricultural fraud with phony 'inorganic' labels" may be subject to a DVRO, maintained that the RICO lawsuit is not frivolous, and asserted the suit is "on track for filing."  (Boldface & capitalization omitted.)  She also disputed his likening of her settlement related communications to extortion and asserted that the litigation privilege is absolute, and if extortion were at issue, then Robert's remedy would be to sue for civil extortion.

### C.  Order Denying the Anti-SLAPP Motion

The trial court issued a written tentative ruling denying the anti-SLAPP motion. After hearing argument from both sides, the court adopted its tentative ruling as its final order and overruled, for purposes of the anti-SLAPP motion only, Susan's evidentiary objections to Robert's declaration in support of his petition.

The order denying the anti-SLAPP motion addressed both steps of the anti-SLAPP analysis.  It explained, citing case authority, that prelitigation statements and writings

7

made in connection with litigation contemplated in good faith are protected under the anti-SLAPP statute, while communications "substantially extraneous to the judicial proceedings" are not protected. As applied to the e-mails cited in Robert's petition, the court rejected Robert's assertion that Susan's missives were mere empty threats, given that she had retained counsel for purposes of the proposed RICO litigation and provided a detailed draft complaint. Nevertheless, the court concluded that "several of the subject e-mails are not substantially related to the substantive issues in the litigation."

The trial court further concluded that even if Susan did meet her burden at the first step, the motion would fail because Robert had met his burden of demonstrating a probability of success on the merits of his petition. The court noted that it had previously found, in granting the requested temporary personal conduct and stay-away order, that Robert's petition was sufficient to establish a prima facie case for a permanent DVRO under the applicable Family Code provisions. It therefore denied Susan's anti-SLAPP motion and further denied both parties' request for attorney fees and costs awards.

Susan appealed from the order denying her anti-SLAPP motion. (Code Civ. Proc., § 904.1, subd. (a)(13).[8])

## II. DISCUSSION

Susan challenges the trial court's denial of her anti-SLAPP motion. She asserts her e-mails are protected speech under the categories enumerated in the anti-SLAPP statute (§ 425.16, subds. (b)(1), (e)) and to which the statutory litigation privilege applies (Civ. Code, § 47). Susan also contends that case law does not support imposition of a domestic violence restraining order based on nonthreatening e-mail communications sent by one litigant to another. She asserts that Robert never gave a clear " 'no party contact' " directive or designated an attorney to receive RICO related communications. She maintains that under these circumstances, the court's denial of her anti-SLAPP

---

[8] Unspecified statutory references are to the Code of Civil Procedure.

8

motion creates a "dangerous precedent that chills settlement effort[s]" for family law litigants.  (Boldface & capitalization omitted.)

### A.  The Anti-SLAPP Statute

Section 425.16 provides that a cause of action arising from an act in furtherance of a person's constitutional right of petition or free speech in connection with a public issue is subject to a special motion to strike, unless the plaintiff—here, Robert as the party seeking the DVRO—establishes a probability of prevailing on the claim.  (§ 425.16, subd. (b)(1).)  The statute "allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities."  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880-881 (*Wilson*).)

A court evaluates a special motion to strike in two steps.  The first examines the nature of the conduct that underlies the plaintiff's allegations to determine whether it is protected by section 425.16; the second assesses the merits of the plaintiff's claim.  (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321 (*Barry*); see also *Laker*, *supra*, 32 Cal.App.5th at p. 760.)  The anti-SLAPP statute is to "be construed broadly" in furtherance of its stated goals.  (§ 425.16, subd. (a); *Barry*, at p. 321.)

In the first step, the trial court determines whether the claim " 'arises from' an ' " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " ' "  (*Laker*, *supra*, 32 Cal.App.5th at pp. 759—760, quoting *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422.)  The court must evaluate whether the moving defendant has shown the speech or act underlying the plaintiff's claim falls within one or more of the four categories of protected acts set out in section 425.16, subdivision (e) (hereafter, section 425.16(e)).  (*Wilson*, *supra*, 7 Cal.5th at p. 884.)  The categories protect any written or oral statement or writing made (1) "before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," (2) "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official

proceeding authorized by law," (3) "in a place open to the public or a public forum in connection with an issue of public interest," or (4) "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16(e).)

If the defendant prevails at the first step, the burden shifts to the plaintiff to demonstrate the merit of the claim. (§ 425.16, subd. (b)(1); *Wilson*, *supra*, 7 Cal.5th at p. 884.) In the second step, the plaintiff must show " 'that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*).) "If the plaintiff is unable to demonstrate that his or her claim has at least minimal merit, then the trial court should deem the cause of action a SLAPP and should strike it." (*Laker*, *supra*, 32 Cal.App.5th at p. 760.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

*B. Standard of Review*

"We review de novo the grant or denial of any anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park*, *supra*, 2 Cal.5th at p. 1067.) We consider the pleadings and declarations, accepting as true the evidence that favors the plaintiff (here, Robert) and evaluating the defendant's (Susan's) evidence " ' " 'only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " ' " (*Barry*, *supra*, 2 Cal.5th at p. 321.)

*C. Analysis*

We first address Susan's framing of the issue on appeal. Susan contends that the trial court recognized that her e-mail communications were made in connection with

10

forthcoming litigation but erroneously "carved out one email" as outside the scope of protected speech. She argues that the "sole question" on appeal "is whether the single email and others like it are privileged, and anti-SLAPP protected."

We disagree with Susan that the trial court based its decision only on the e-mail that it quoted in its order, or even "found" (as Susan contends) "that most of the email was litigation privileged." The court cited the language of an e-mail from June 27 and concluded that "this e-mail (and several others like it) are not protected activity as contemplated by" section 425.16(e)(1) and (2).

We independently review the court's determination that Susan failed to meet her burden at step one. We are not bound by the trial court's findings with respect to the nature of the communications and review the trial court's ruling, not its reasoning. (*Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1002 (*Trinity*).)

There is no dispute that Robert's petition arises generally from speech activity, namely, Susan's e-mails communicating what she contends is litigation related information. The disputed question is whether Susan has shown that the e-mails fall within one or more of the four categories of " 'act[s]' " set out in section 425.16(e).

      1. <u>First Step: Protected Acts</u>

In her anti-SLAPP motion, Susan asserted that her e-mails fall under all four anti-SLAPP categories but focused on section 425.16(e)(1) and (2), asserting only in a conclusory manner that "(3) and (4) also apply." On appeal, Susan generally reiterates this position. However, she proffers argument only to support her claim that the e-mails come under section 425.16, subdivision (e)(2) (hereafter, § 425.16(e)(2)) as " 'writing made in connection with an issue under consideration by . . . a judicial body,' that being the family court." While she also asserts that her e-mail qualifies as protected speech under section 425.16(e)(4) "because it concerned the food supply and chain, the mis-labeling of 'organic' lettuce," she provides no additional analysis or authority to support

11

the application of this provision to her e-mail communications.  Insofar as Susan has failed to support any argument on the applicability of section 425.16(e)(1), (3), and (4) to the communications underlying the petition, we deem those points forfeited.  (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620; see *Hernandez v. First Student, Inc.* (2019) 37 CalApp.5th 270, 277.)  We therefore consider only whether Susan's e-mails come within the intended scope and meaning of section 425.16(e)(2).

Section 425.16(e)(2) protects "any written or oral statement or writing made *in connection with* an issue under consideration or review by a legislative, executive, or judicial body."  (§ 425.16(e)(2), italics added.)  This does not require that the " 'issue under consideration' " concern a matter of public interest.  (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1261 (*Neville*).)  The protection is not limited to statements made after the commencement of a legal or other official proceeding.  (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 886–887 (*Digerati*).)

"In the anti-SLAPP context, ' "[a]ny act" includes communicative conduct such as the filing, funding, and prosecution of a civil action.' "  (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 658 (*Timothy W.*), quoting *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)  This includes communications made in anticipation of litigation.  (*Neville*, *supra*, 160 Cal.App.4th at p. 1263; *Trinity*, *supra*, 59 Cal.App.5th at p. 1005.)  However, protection is not accorded to statements "having any connection, however remote, with an official proceeding."  (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 866 (*Paul*).)  Rather, "[t]he statements or writings in question must occur in connection with 'an issue under consideration or review' in the proceeding" or the anticipated action.  (*Ibid.*)

As interpreted by the Courts of Appeal, a statement or writing is "made 'in connection with' " litigation under section 425.16(e)(2)—including anticipated litigation—"if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation."  (*Neville*, *supra*, 160 Cal.App.4th at p. 1266.)

Drawing guidance from the scope of the litigation privilege set forth in Civil Code section 47, subdivision (b),[9] courts have articulated the standard to reflect the reasonable relevancy requirement incorporated in the litigation privilege. (*Neville*, *supra*, 160 Cal.App.4th at p. 1266 ["The reasonable relevancy requirement of [Civil Code] section 47 is analogous to the 'in connection with' standard of section 425.16, subdivision (e)(2)."].) "To be protected by the litigation privilege, a communication must be 'in furtherance of the objects of the litigation.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 (*Action Apartment*).)

Put differently, the statement must " 'be connected with, or have some logical relation to, the action, i.e., . . . not be extraneous to the action.' " (*Action Apartment*, *supra*, 41 Cal.4th at p. 1251; see *Neville*, *supra*, 160 Cal.App.4th at p. 1266.) "A prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration." (*Action Apartment*, at p. 1251.) " 'Good faith' in this context refers to a good faith intention to file a lawsuit rather than a good faith belief in the truth of the communication." (*Digerati*, *supra*, 194 Cal.App.4th at p. 887.) Courts have concluded on this basis that "a prelitigation statement falls within clause (1) or (2) of section 425.16, subdivision (e) if the statement ' "concern[s] the subject of the dispute" and is made "in anticipation of litigation 'contemplated in good faith and under serious consideration.' " ' " (*Digerati*, at p. 887; accord, *Neville*, at p. 1268.)

Robert asserts that the e-mails from Susan do not qualify as protected litigation related communications because there was no "legitimate litigation" being

---

[9] The litigation privilege applies to a publication or broadcast made as part of a "judicial proceeding." (Civ. Code, § 47, subd. (b).) Though the litigation privilege is not substantively the same as the anti-SLAPP protection, it may be viewed as an aid at the first step in the anti-SLAPP analysis when deciding "whether a given communication falls within the ambit of subdivisions (e)(1) and (2)" of section 425.16. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323 (*Flatley*).)

communicated. We agree that, even under the broad construction afforded section 425.16, not all communications that reference proposed or threatened litigation satisfy the relevancy and good faith criteria for a statement or writing "made in connection with an issue under consideration . . . by a . . . judicial body" within the ambit of section 425.16(e)(2).

Robert's petition contains 10 e-mails from Susan. Many of the communications lack logical relevance to the threatened "seed RICO" dispute and fail to further any discernible object of the anticipated litigation or address an issue under review in connection with that proceeding.[10] (See *Neville*, *supra*, 160 Cal.App.4th at p. 1266; *Paul*, *supra*, 95 Cal.App.4th at p. 866.) In particular, the June 11, June 12, June 15, June 17, June 27, and first July 1 e-mails are irrelevant or highly peripheral to the proposed RICO litigation. By contrast, the other e-mails in the petition (the second e-mail on July 1 and the e-mails on July 2 and July 7) make direct assertions about the alleged facts underlying Susan's proposed RICO action. Nevertheless, Robert contends the e-mails are not protected because they were not made in anticipation of litigation " 'contemplated in good faith and under serious consideration.' " (*Digerati*, *supra*, 194 Cal.App.4th at p. 887.)

Having reviewed each e-mail under the applicable standard for protected speech under section 425.16(e)(2), we conclude that certain e-mails (namely, the second July 1

---

[10] Susan asserts on appeal that both "the marital dissolution and seed RICO were the subjects of the" e-mails that prompted Robert's DVRO petition. However, in reviewing de novo the anti-SLAPP motion, we look to the record before the trial court. Specifically, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).)" (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3.) Susan's declaration in the trial court centered on the proposed RICO action as the basis for her anti-SLAPP claim, with the ongoing family law litigation provided only for context. The declaration of Susan's counsel, Evans, in support of her motion similarly addresses the RICO action as the basis for the anti-SLAPP claim. Accordingly, we focus our analysis of the e-mails as "seed RICO" litigation related speech.

14

e-mail and the July 2 and both July 7 e-mails) qualify as protected conduct under the anti-SLAPP statute as written statements "made in connection with" (§ 425.16(e)(2)) the proposed RICO litigation. The other e-mails (on June 11, June 12, June 15, June 17, June 27, and the first July 1 e-mail) bear no meaningful connection to the litigation and are not protected by the statute.

For example, the June 11 e-mail describes the allegedly unethical behavior of Robert's former family law counsel. The e-mail neither appears to " 'concern[] the subject of the dispute' " in the proposed RICO action nor reflect good faith contemplation of the RICO-related action. (See *Neville*, *supra*, 160 Cal.App.4th at p. 1268.) The spate of references in the June 17 e-mail to the alleged involvement of Robert's girlfriend (M.)[11] in the "racket" (calling her "Legal Assistant to Private Judge Mobster, Bookkeeper for the Midnight Shovel Breeder Mob, Paralegal for the GA based Mobster lawyer, and legal affairs manager for the seed counterfeiter divorce cases") similarly do not render the communication relevant in any meaningful way "to the substantive issues" in the proposed RICO litigation. (*Id*. at p. 1266.) And despite making offhand references to the seed companies "stealing" varieties, "stealing" genetics and "illegally growing seed," the June 12, 15, and June 27 e-mails offer no information on any "substantive issue[]" in the proposed RICO litigation (*ibid*.) and contain numerous comments extraneous to any such proposed action (*Action Apartment*, *supra*, 41 Cal.4th at p. 1251).

The first July 1 e-mail also lacks substantive connection to the anticipated litigation, instead expressing hostility to Robert, warning him not to underestimate Susan, and asserting that she has copied Robert's girlfriend's second divorce case files from the public court file and has "the first case ready to scan when [she] feel[s] like it."

None of these e-mails, or related evidence, suggests a "good faith intention to file a lawsuit" (*Digerati*, *supra*, 194 Cal.App.4th at p. 887) and the e-mails bear little

---

[11] We refer to third parties named in the e-mails by first initial to protect their privacy interests. (Cal. Rules of Court, rule 8.90(b)(10).)

15

resemblance to communications in other cases that have found prelitigation or litigation related communications protected under section 425.16(e)(2). (See, e.g., *Digerati*, at pp. 887–888 [holding that musician's statements in film dispute were made in furtherance of the musician's right of petition under § 425.16(e)(2), where the statements asserted the musician's final right of approval for the film, advised distributors that the film was unauthorized, and threatened litigation]; *Neville*, *supra*, 160 Cal.App.4th at p. 1267–1268 [deciding that employer's letters to a former employee's third-party customers were protected where letters "related directly to" the alleged misappropriation of confidential information by the former employee, sought to prevent further misuse of proprietary information, and "contained no statements of fact concerning [the former employee] that were not based on or related to the allegations" at issue]; *Trinity*, *supra*, 59 Cal.App.5th at p. 1005 [explaining that e-mails sent on behalf of the plaintiff corporation requesting information about insurance coverage dispute "were ' "communications preparatory to or in anticipation of the bringing of an action" ' " because the e-mail preceded the filing of litigation, asked for documents and posed questions about the workers' compensation insurance policy at issue, and served "essentially" as informal discovery prior to the filing of any civil complaint].)

The June 11, June 12, June 15, June 17, June 27, and the first July 1 e-mails are largely or wholly composed of assertions and innuendo that bear no clear relation to Susan's anticipated RICO action. This lack of relatedness more closely resembles the circumstances in *Paul*, a case involving intentional infliction of emotional distress, invasion of privacy, and other tortious interference claims arising from a lawyer's investigative acts while prosecuting his client's arbitration claims against a security broker. (*Paul*, *supra*, 95 Cal.App.4th at p. 864.) The appellate court held that the attorney's "intrusive pre-hearing investigation of and disclosures concerning" the security broker's personal affairs extended beyond the scope of issues related to the arbitration (*id*. at p. 867) and did not pertain to " 'an issue under consideration or review' " in that

16

proceeding. (*Id*. at p. 868.) The attorney failed to establish that his investigation and disclosures were acts "in connection with" an official proceeding protected by the anti-SLAPP statute. (*Ibid*.)

As the court did in *Paul*, we conclude it is insufficient for Susan to generally aver a connection between her communications to Robert and the anticipated exercise of her petitioning rights by filing a federal RICO action. The statements must be "in connection with" the subject of the dispute and "an issue under consideration or review" in the anticipated litigation. (§ 425.16(e)(2); *Paul*, *supra*, 95 Cal.App.4th at pp. 867–868.)

Susan disputes this characterization of her e-mails and insists that nonthreatening (nonviolent) communications between divorcing spouses, however angry in tone, bothersome, or offensive, remain litigation privileged. She points to the recent decision in *Hansen v. Volkov* (2023) 96 Cal.App.5th 94 (*Hansen*) for the proposition that her communications to Robert, however "annoying," were constitutionally protected. (*Id*. at p. 97.)

*Hansen* is not an anti-SLAPP case and does not assist Susan. The appeal in that case addressed the imposition of a civil harassment restraining order in a dispute between opposing counsel in a dissolution proceeding. (*Hansen*, *supra*, 96 Cal.App.5th at p. 97.) In reversing the order granting the restraining order, the appellate court observed that the e-mails sent by the defendant attorney to his opposing counsel after he learned she had canceled his client's deposition were "seriously annoying" but "did not contain any threats of violence" and "were constitutionally protected litigation activity" that could not be "properly considered part of a course of conduct of harassment." (*Id*. at p. 105.) The e-mails in question specifically addressed a disputed deposition appearance in the context of the ongoing litigation. (*Id*. at p. 100.) The court's observation that they constituted protected litigation activity therefore offers no authority for the entirely different proposition that e-mails between divorcing spouses are *per se* litigation related within the meaning of the anti-SLAPP statute, however remote the topics addressed might be from

17

the subject of the litigation raised in the anti-SLAPP motion. (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11 [" ' "[C]ases are not authority for propositions not considered." ' "].)

We reach a different conclusion as to the remaining e-mails (the second e-mail on July 1, and e-mails on July 2 and July 7) giving rise to the petition. They are different because they pertain more directly to Susan's anticipated RICO lawsuit and include or refer to a draft complaint in that action. The second July 1 e-mail attached a revised RICO draft complaint (citing the possibility that Robert's counsel had "failed to forward" it to him) and advised Robert to "not underestimate [Susan's] ability to get people to come forward with records, facts and information that would support this federal RICO case." Susan asserted in the e-mail that she had witnesses ("[c]urrent and former T[animura] & A[ntle] employees" whom Robert's brother "[S.]" had "stepped on, and over these past 40 years") who could validate the allegations in the draft complaint.

Susan wrote again on July 2, after Robert's attorney had requested that Susan cease sending e-mails to Robert. Her e-mail suggested that Martinez (Robert's attorney) was "engaging in conduct that may lead to the civil RICO drafts being placed in the public court file." She asserted that while her hope had always been "to settle our issues without further harm to the reputations of not only those involved, but our associates and family members" and "to be able to address these issues without continuing to place deeply personal and financial issues in the public domain as Robert has insisted on for nearly 10 years," Martinez's conduct calling her "152- page civil RICO seed counterfeiting draft complaint and accompanying letter 'stupid' " could result in the public filing of the complaint, which "would impact all of [their] children, and grandchildren."

Additional e-mails on the morning and evening of July 7 again raised the subject of the proposed RICO action. The July 7 e-mail asserted that Robert should "find a lawyer who can help you read the federal complaint instead of spending more money on

[] Martinez who sounds more and more like a mobster's lawyer" and protect their children, who would be harmed by Robert "trying to continue the family law case as your effort to marginalize what you have done in the federal matter."

Broadly construed, in view of the anti-SLAPP statute's goals to screen legal claims targeting protected litigation related activity (*Wilson*, *supra*, 7 Cal.5th at pp. 880-881), we decide that the statements in these e-mails were arguably "made in connection with an issue under consideration or review" in anticipated litigation within the scope of section 425.16(e)(2).

Having decided that Robert's claim for DVRO arises in part from protected activity under the anti-SLAPP statute (and in part on unprotected activity), we turn to the second step of the analysis.

### 2. Second Step: Prima Facie Case

Our Supreme Court in *Baral v. Schnitt* (2016) 1 Cal.5th 376 has explained that "[w]hen relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded" at the first stage of the anti-SLAPP analysis, and the court assess whether relief is sought based on allegations arising from the protected activity. (*Id*. at p. 396.) "If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Ibid*.)

In addition to the e-mails we have decided are unprotected activity, Robert's petition seeks relief based on allegations of abuse (Fam. Code, § 6203) arising from protected activity—namely, Susan's second July 1, July 2 and July 7 e-mails in anticipation of filing her proposed RICO action. To avoid the court striking his petition

19

claims that arise out of protected conduct as a SLAPP, Robert must show that, with respect to those claims, his petition has " 'at least "minimal merit" ' " and he can overcome any affirmative defense Susan has raised. (*Laker*, *supra*, 32 Cal.App.5th at p. 760; *Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 154.)

A plaintiff cannot show a probability of prevailing on the merits for anti-SLAPP purposes where the claim is barred by the litigation privilege codified in Civil Code section 47. (*Flickinger v. Finwall* (2022) 85 Cal.App.5th 822, 840.) Susan asserts that the litigation privilege applies and prevents Robert from making the showing required at the second step of the anti-SLAPP analysis. She maintains that her protected e-mails "were not domestic violence" because they come within the litigation privilege, and "[a] litigant has [a] free speech right to speak forcefully and potently to the opposing litigant." She argues that her e-mails were "designed to 'get under the skin' of the opposing litigant" and asserts that "litigation communication has that prick purpose – to make the opponent uncomfortable" and promote settlement efforts.

Robert disagrees. He disputes Susan's assertion of the litigation privilege, maintains that e-mails that qualify as "abuse" under the DVPA are not privileged, and points out that the California Supreme Court has recognized "exceptions to the litigation privilege based on irreconcilable conflicts between the privilege and other co-equal state laws." (*Action Apartment*, *supra*, 41 Cal.4th at p. 1247.) Robert contends that the repetitive, harassing, and irrelevant nature of the e-mails places them within the intended purview of the DVPA's "disturbing the peace" provision. (Fam. Code, §§ 6203, subd. (a)(4), 6320, subd. (a).) Since the DVPA is narrower than the generally applicable litigation privilege under Civil Code section 47, Robert argues his legal and factual showing in support of a claim for a DVPA restraining order is sufficient to carry his burden.

We reject the proposition that because Susan's second July 1, July 2, and July 7 e-mails, broadly construed, come within section 425.16(e)(2) at the first step of the anti-

20

SLAPP analysis, the litigation privilege necessarily applies. "[A]cts falling within the anti-SLAPP statute because of their connection with judicial proceedings do not 'inevitably' fall within the litigation privilege. (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 787 (*Crossroads*); see *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770 [rejecting the presumption "that acts falling within the anti-SLAPP statute because of their connection with judicial proceedings also inevitably fall within the litigation privilege"].)

While the litigation privilege is relevant to construing the scope of section 425.16(e)(1) and (2), the statutes are not coextensive and serve different purposes. (*Flatley*, *supra*, 39 Cal.4th at p. 324.) "Section 47 establishes a privilege that bars liability in tort for the making of certain statements." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360.) The litigation privilege "serves broad goals of guaranteeing access to the judicial process, promoting the zealous representation by counsel of their clients, and reinforcing the traditional function of the trial as the engine for the determination of truth." (*Flatley*, at p. 324.) It affords litigants " 'the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Id*. at p. 321.)

The litigation privilege, however, does not apply in the face of more specific statutes. Courts have applied this principle to conclude that "the litigation privilege does not bar an action filed under a more specific statute when application of the privilege would render the specific provision 'significantly or wholly inoperable.' " (*People ex rel. Alzayat v. Hebb* (2017) 18 Cal.App.5th 801, 808, quoting *Action Apartment*, *supra*, 41 Cal.4th at p. 1246.) For example, the litigation privilege has been found inapplicable to crimes like perjury, false report of a criminal offense, and attorney solicitation through the use of " ' "runners" ' " or " ' "cappers" ' " (*Action Apartment*, at p. 1246), due to "irreconcilable conflicts between the privilege and other co-equal state laws." (*Id*. at p. 1247.) These exceptions are "guided by the 'rule of statutory construction that

21

particular provisions will prevail over general provisions.' " (*Id*. at p. 1246.) The statutes for the crimes excepted from the privilege "would be significantly or wholly inoperable if [their] enforcement were barred when in conflict with the privilege." (*Ibid*.)

Robert appears to argue that any e-mails that constitute protected conduct are not privileged because they constitute abuse under the DVPA. We disagree with this statement as a general principle of law. The statutory authority for issuance of a domestic violence restraining order under the DVPA does not generally present an "irreconcilable conflict[]" with the litigation privilege. (*Action Apartment*, *supra*, 41 Cal.4th at p. 1247.) Nor does there appear to be any categorical exclusion from the litigation privilege for domestic violence restraining order claims. Nevertheless, we agree with Robert that the litigation privilege does not apply on these facts.

Robert's petition for domestic violence restraining order does not seek liability in tort but invokes the narrow statutory protection afforded by the DVPA. As in other contexts involving non-tort claims, we consider whether application of the privilege in this case furthers the purposes behind it based on the underlying facts. (See, e.g., *Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 663–664 [noting that "[b]reach of contract claims are not categorically excluded from the [litigation] privilege" and examining "whether the privilege furthers the purposes behind it based on the underlying facts"]; accord, *Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1492; *McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1169–1170; see also *Olson v. Doe* (2022) 12 Cal.5th 669, 687 [declining to reach the issue of "under what circumstances the litigation privilege of Civil Code section 47, subdivision (b) applies to contract claims"].)

A court may issue a restraining order under the DVPA based on an affidavit or testimony that "shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (Fam. Code, § 6300, subd. (a).) The burden of proof is preponderance of the evidence. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 11 (*Curcio*).) For purposes of the

DVPA, " 'abuse' " includes "contacting . . . or disturbing the peace of the other party." (Fam. Code, §§ 6320, subd. (a), 6203, subd. (a)(4).) " '[D]isturbing the peace' " means "conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party." (Fam. Code, § 6320, subd. (c); see *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.) A court exercises discretion to enjoin contact under the DVPA more liberally than in the civil harassment context. (*Curcio*, at p. 11; *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.)

In this case, the conduct that under the DVPA allegedly constitutes "contacting . . . or disturbing the peace of the other party" (Fam. Code, §§ 6320, subd. (a), 6203, subd. (a)(4)) also arguably constitutes a "publication" made as part of a "judicial proceeding" (Civ. Code, § 47, subd. (b)) for purposes of the litigation privilege. However, applying the litigation privilege to bar Robert's DVRO petition based on the four protected e-mails would not advance the policies behind the privilege. As the trial court noted in its ruling, the petition for domestic violence restraining order seeks only to prevent Susan from directly contacting Robert, who is represented by counsel. It does not inhibit Susan's access to judicial determination of her rights with respect to her "seed RICO" claims, restrain her from vigorously pursuing her proposed action in federal court, or from directing legitimate litigation related communications, including settlement overtures, to Robert's counsel or other individuals.[12] In these circumstances, applying the privilege would not serve the goal of "guaranteeing access to the judicial process" (*Flatley*, *supra*, 39 Cal.4th at p. 324) because the DVRO does not limit or constrain Susan's access to those processes.

---

[12] Susan points to the fact that Robert's divorce attorney, Martinez, has refused to receive RICO-related communications, and Robert has not designated other counsel for this purpose. However, this refusal would not preclude Susan from contacting Martinez regarding settlement overtures related to the then-pending family law litigation. Nor would that refusal prevent Susan from filing her federal complaint and effecting service of process on Robert through a process server.

Further, application of the litigation privilege in this circumstance would defeat the goal of guaranteeing Robert's access to the courts by frustrating his ability to seek a protective order enjoining Susan from a course of conduct in which she continues to contact him about the now-final judgment in their marital dissolution under the guise of presaging her RICO claims against him.  (See *Crossroads*, *supra*, 13 Cal.App.5th at p. 788 [rejecting application of the litigation privilege based on an alleged oral agreement, where the privilege would effectually "immunize [the defendant] against any enforcement of its purported violations of the deed" and preclude the plaintiff from seeking judicial enforcement of its contract].)  Because Robert's DVRO petition is based in part on communications related to Susan's anticipated legal action and in large part on other, unprotected e-mails, application of the privilege would render the DVPA "significantly or wholly inoperable," were its enforcement barred in these circumstances. (*Action Apartment*, *supra*, 41 Cal.4th at p. 1246.)  Accordingly, we conclude that under the facts presented, the litigation privilege does not bar Robert's petition for DVRO.

Turning to whether Robert's DVPA claim shows "minimal merit," we agree with Robert that conduct involving communications such as text messages and e-mail can constitute abuse under the "disturbing the peace" provision of the DVPA.  In *Sabato v. Brooks* (2015) 242 Cal.App.4th 715, the appellate court affirmed the issuance of a three-year DVRO based on evidence that the defendant attempted frequent contact with the plaintiff after their divorce, including sending her texts and e-mails on about a weekly basis (which he characterized as " 'non-threatening' ") (*id*. at pp 719, 725).  The court reasoned that even without considering other allegations related to the defendant taking the plaintiff's house key and "threats and/or violence," the defendant's "unilateral, unwanted and harassing contacts supported the issuance of the domestic violence restraining order."  (*Id*. at p. 725.)

In *In re Marriage of Ankola* (2020) 53 Cal.App.5th 369 (*Ankola*), a panel of this court upheld a DVRO against the plaintiff's ex-husband based on substantial evidence

not only that he had stalked the plaintiff but had repeatedly failed "to respect [her] wishes that he not contact her" and continued to make contact in e-mails and telephone calls. (*Id*. at p. 81.)  Similarly, in *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1147 (*Burquet*), the appellate court affirmed the imposition of a DVRO after the defendant ignored his former romantic partner's requests that he not contact her.  The evidence showed the defendant had engaged "in a course of conduct of contacting [her] by phone, e-mail, and text, which messages contained inappropriate sexual innuendos" and had appeared at her residence uninvited and then refused to leave.  (*Id*. at p. 1144.)  The court explained that the defendant's actions " 'disturb[ed] the peace of the other party' " (*id*. at p. 1146) and constituted an act of " 'abuse' " under the DVPA.  (*Id*. at p. 1147.)

By contrast, in *Curcio*, the appellate court held that the defendant's "single, *private* Facebook post accusing [the plaintiff] of abusing her" during the time in which the two women dated was upsetting but did not "rise to the level of destruction of [the plaintiff]'s mental and emotional calm, sufficient to support the issuance of a domestic violence restraining order." (*Curcio*, *supra*, 47 Cal.App.5th at p. 13.)  The court contrasted the evidence with that in other cases involving repeated episodes of unwanted contact.  (*Id*. at pp. 12–13.)  It explained, "[t]he DVPA was not enacted to address all disputes between former couples, or to create an alternative forum for resolution of every dispute between such individuals." (*Id*. at p. 13.)

We decide, based on the evidence in the record, and accepting Robert's factual assertions in his declaration as true for purposes of resolving the anti-SLAPP motion (*Park*, *supra*, 2 Cal.5th at p. 1067), that Robert has met his burden to establish a prima facie showing of abuse warranting further consideration of his claim for protective order under the DVPA. (Fam. Code, § 6203.)  Considered in isolation, Susan's e-mails to Robert might be considered mere annoyances.  The broad authority conferred by the DVPA for issuance of a DVRO, however, allows the court to consider "the totality of the

circumstances" in determining whether the conduct "destroys the mental or emotional calm of the other party" (Fam. Code, § 6320, subd. (c)).

Unlike in *Curcio*, which involved only a single, private social media post and no "harassing, threatening, or unwanted texts or e-mails" (*Curcio*, *supra*, 47 Cal.App.5th at p. 13), Susan's e-mails repeatedly addressed Robert (though he had counsel), intending to " 'get under the skin' " and make him "upset, nervous, or worried." Although the e-mails contained no threats of physical harm or violence, and there is no evidence in the record that Susan engaged in other forms of unwanted contact with Robert during the post-dissolution period (cf. *Burquet*, *supra*, 223 Cal.App.4th at p. 1142; *Ankola*, *supra*, 53 Cal.App.5th at pp. 380–381), "the DVPA's definition of abuse 'is not confined to physical abuse but specifies a multitude of behaviors which does not involve any physical injury or assaultive acts.' " (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1425.) Nor does the DVPA require, as a prerequisite to issuance of a restraining order, proof that the alleged victim (Robert) formally asked the alleged perpetrator (Susan) to stop the harassing contact (Susan's e-mails threatening to file the RICO action). The statute requires only a showing, to the court's satisfaction, of "reasonable proof of a past act or acts of abuse" (Fam. Code, § 6300, subd. (a)), where such abuse includes "contacting . . . or disturbing the peace of the other party." (Fam. Code, §§ 6320, subd. (a), 6203, subd. (a)(4).)

Under the totality of the circumstances, Robert has made a prima facie showing of facts sufficient to sustain a favorable result on his DVRO petition if the facts he alleges are substantiated. Robert's claim under the DVPA thus has at least the requisite minimal merit to avoid being stricken as a SLAPP. (*Laker*, *supra*, 32 Cal.App.5th at p. 760.)

### III. DISPOSITION

The trial court's order denying appellant Susan Bassi's special motion to strike under Code of Civil Procedure section 425.16 is affirmed. Respondent Robert Bassi is

26

entitled to recover his reasonable costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Filed 5/9/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ROBERT BASSI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SUSAN BASSI,<br><br>    Defendant and Appellant. | H049873<br>(Santa Clara County<br>Super. Ct. No. 2012FL009065) |

BY THE COURT[13]:


The opinion in this case filed April 15, 2024, was not certified for publication. After the court's review of a request under California Rules of Court, rule 8.1120(a), and it appearing that the opinion meets the standards for publication under California Rules of Court, rule 8.1105(c)(2), (3), (4), and (6), it is therefore ordered that the opinion be published in the Official Reports.

---

[13] Before Danner, Acting P. J., Wilson, J., and Bromberg, J.

1

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| Trial Judge: | Hon. Andrea E. Flint |
| Counsel for Appellant Susan Bassi: | Patrick Joseph Evans |
| Counsel Respondent Robert Bassi: | Carlos Martinez<br>Christine Fumi Kawamoto<br>Bay Area Law Firm |

**H049873**
*Bassi v. Bassi*