Filed 6/18/26  Moussazadeh v. Integrative Surgical Associates Group CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BOBBY BAKHTIAR MOUSSAZADEH et al., <br><br> Cross-complainants and Appellants, <br><br> v. <br><br> INTEGRATIVE SURGICAL ASSOCIATES GROUP LLC et al., <br><br> Cross-defendants and Respondents. | B346388, B349540 <br><br> (Los Angeles County Super. Ct. No. 24STCV18438) |

APPEALS from orders of the Superior Court of Los Angeles County, Joseph Lipner, Judge.  Affirmed; dismissed.

Novian & Novian, Farhad Novian and Andrew B. Goodman for Cross-complainants and Appellants.

Blank Rome, Arash Beral, Saam Takaloo, and Ryan Coy for Cross-defendants and Respondents.

## INTRODUCTION

Bobby Bakhtiar Moussazadeh, M.D., and B Moussazadeh, A Medical Corporation (collectively, Moussazadeh) appeal from the trial court's order granting a motion by Integrative Surgical Associates Group LLC, Farnad Medical Corporation, and Shahbaz Farnad, M.D. (collectively, Farnad) to strike Moussazadeh's cross-complaint under Code of Civil Procedure section 425.16 (commonly known as an anti-SLAPP motion).[1] Because Moussazadeh's causes of action arose from statements by Dr. Farnad made in connection with anticipated litigation and were barred by the litigation privilege, we affirm the order granting the special motion to strike. We dismiss Moussazadeh's appeal from a nonappealable order granting Farnad's motion for attorneys' fees under section 425.16, subdivision (c).

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Farnad Sues Moussazadeh*

Dr. Farnad owned and operated Integrative Surgical Associates Group LLC (ISAG), a surgical center for outpatient procedures, and provided anesthesia services through Farnad Medical Corporation (FMC). Dr. Moussazadeh provided pain management treatment, including injections, to patients who were referred by personal injury attorneys.

In 2020 Dr. Farnad agreed to allow Dr. Moussazadeh to treat patients at ISAG. The two doctors agreed Dr. Moussazadeh

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

2

would submit bills under ISAG's national provider identification (NPI) number and tax identification number.[2]  The bills included separate charges for Dr. Moussazadeh's services, for ISAG's services, and, if necessary, for FMC's anesthesia services. Because Dr. Moussazadeh's patients were personal injury plaintiffs, he, ISAG, and FMC were paid "on a lien basis," meaning they were not paid until the patient received a judgment in, or settlement of, the patient's personal injury matter. Dr. Farnad agreed to allow Dr. Moussazadeh to handle the billing and to negotiate settlement of liens with the personal injury attorneys.  Dr. Moussazadeh agreed to pay ISAG advances (which Dr. Moussazadeh characterized as "rent") to cover some of ISAG's expenses, which would be credited to Dr. Moussazadeh when lien payments were received.

In August 2023 Dr. Farnad, citing patient safety concerns, revoked Dr. Moussazadeh's privileges to treat patients at ISAG. Dr. Farnad claimed that in December 2023 he received documents showing Dr. Moussazadeh had billed insurance companies for services he did not perform.  After investigating, Dr. Farnad discovered Dr. Moussazadeh had billed for other services he did not perform.  Dr. Farnad also discovered that, in many cases, Dr. Moussazadeh did not pay Dr. Farnad for ISAG's and FMC's shares of the fees.

---

[2]  NPI numbers "are unique identifiers issued by the Centers for Medicare and Medicaid Services to healthcare providers such as doctors and medical clinics."  (*U.S. v. Gonzalez* (6th Cir. 2014) 560 Fed.Appx. 554, 556; see *In re Shapow* (Bankr. C.D.Cal. 2019) 599 B.R. 51, 72 [an NPI is a "unique number required for a health care provider to bill an insurance company"].)

In December 2023 counsel for Dr. Farnad sent Dr. Moussazadeh a demand letter. After several months of negotiations the parties participated in mediation, but were unable to settle their dispute.

In July 2024 ISAG and FMC filed this action against Moussazadeh. In their operative first amended complaint they alleged that Moussazadeh fraudulently billed for services Dr. Moussazadeh never performed at ISAG and that Moussazadeh embezzled millions of dollars from ISAG. ISAG and FMC asserted causes of action for accounting, breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, goods and services rendered, money had and received, open book account, unjust enrichment, conversion, violation of Penal Code section 496 and Business and Professions Code section 17200 et seq., and aiding and abetting.

B.    *Moussazadeh Files a Cross-complaint*

In November 2024 Moussazadeh filed a cross-complaint against ISAG, FMC, and Dr. Farnad. Moussazadeh alleged that, after Dr. Farnad revoked Dr. Moussazadeh's privileges to treat patients at ISAG, Dr. Farnad urged him to refer his patients to Dr. Farnad for treatment and offered to take over collecting liens. Moussazadeh alleged that when Dr. Moussazadeh refused and began treating patients at a different surgery center, Dr. Farnad "began efforts to actively and maliciously poach Moussazadeh's business."

Moussazadeh alleged Dr. Farnad contacted personal injury attorneys with whom Dr. Moussazadeh worked and tried to convince them to stop working with Dr. Moussazadeh and to send their patients to Dr. Farnad instead. Moussazadeh alleged

4

Dr. Farnad defamed Dr. Moussazadeh by telling personal injury attorneys that Dr. Moussazadeh was "defrauding insurance companies for the National Basketball Association" and that Dr. Moussazadeh "would tell patients that if they did not want an actual injection, that they could come by [his] office and he would purport to give them an injection." Moussazadeh asserted causes of action for defamation, intentional interference with prospective economic advantage, and violation of Business and Professions Code section 17200.

C.    *The Trial Court Grants Farnad's Special Motion To Strike Under Section 425.16*

In January 2025 Farnad filed a special motion to strike Moussazadeh's cross-complaint. Farnad argued that the cross-complaint was based on Dr. Farnad's protected prelitigation communications regarding Dr. Moussazadeh's fraudulent billing and insurance claims and that the litigation privilege barred all of Moussazadeh's causes of action.

The trial court granted the motion. On the first step of the analysis under section 425.16, the court ruled Dr. Farnad's allegedly defamatory communications with personal injury attorneys "occurred as part of the collective effort by [Farnad] and [Moussazadeh] to resolve [Farnad's] claims prior to [Farnad] filing this lawsuit." Therefore, the court ruled, Moussazadeh's cross-complaint arose from protected activity. On the second step of the analysis, the court ruled Moussazadeh did not show a probability of success because the litigation privilege barred his causes of action. The trial court also granted Farnad's motion for attorneys' fees and awarded Farnad $45,600.90 in fees and costs.

Moussazadeh timely appealed from the orders granting the special motion to strike and the motion for attorneys' fees.

## DISCUSSION

A. *Section 425.16*

Section 425.16, subdivision (b)(1), states a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Section 425.16, subdivision (e), provides an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  "Section 425.16 'provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.'" (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 642; see *Clapkin v. Levin* (2026) 119 Cal.App.5th 222, 231.)

Courts follow a two-step process in evaluating special motions to strike under section 425.16.  "First, 'the moving defendant bears the burden of establishing that the challenged

6

allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009; see *Medallion Film LLC v. Loeb & Loeb LLP* (2024) 100 Cal.App.5th 1272, 1283-1284.) We review de novo an order granting or denying a special motion to strike under section 425.16. (*Bonni*, at p. 1009; *Clapkin v. Levin*, *supra*, 119 Cal.App.5th at p. 231.)

B. *The Trial Court Did Not Err in Granting Farnad's Special Motion To Strike Moussazadeh's Cross-complaint*

1. *Moussazadeh's Cross-complaint Arose Out of Protected Activity*

"Section 425.16 protects litigation-related activity, i.e., 'any written or oral statement or writing made before a . . . judicial proceeding' or 'in connection with an issue under consideration or review by a . . . judicial body.'" (*Cocoa AJ Holdings, LLC v. Schneider* (2025) 115 Cal.App.5th 980, 991; see § 425.16, subd. (e)(1) & (2).) A "statement or writing is 'made "in connection with"' litigation under section 425.16(e)(2)—including anticipated litigation—'if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation.'" (*Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1096; see *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266.)

7

To determine whether a cause of action arises from protected activity, we "'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Bonni v. St. Joseph Health System*, *supra*, 11 Cal.5th at p. 1009; see *Callister v. James B. Church & Associates, P.C.* (2025) 108 Cal.App.5th 185, 193.) The elements of a defamation cause of action are "'(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720; accord, *Cocoa AJ Holdings, LLC v. Schneider*, *supra*, 115 Cal.App.5th at p. 997.) Moussazadeh alleged Dr. Farnad made defamatory statements to personal injury attorneys, including statements that Moussazadeh was defrauding insurance companies and that Dr. Moussazadeh told patients that, if they came to Moussazadeh's office, "he would purport to give them an injection." The causes of action for intentional interference with prospective economic advantage and unfair business practices were based on the same allegations as the defamation cause of action.

We also consider the evidence the parties submitted. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 ["In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'"].) Moussazadeh submitted the declaration of Dennis Behdadnia, a personal injury attorney who referred clients to Dr. Moussazadeh.[3] Behdadnia stated that he spoke by phone

---

[3] Moussazadeh submitted an unsigned declaration by Behdadnia and sought an order under section 425.16,

8

with Dr. Farnad on March 5, 2024, that Dr. Farnad told Behdadnia and his two partners that Dr. Moussazadeh "was committing fraud and to be careful," and that, after the conversation, Behdadnia's office has not referred any patients to Dr. Moussazadeh.  Behdadnia followed up with an email to Dr. Farnad stating: "Pleasure speaking with you.  Please forward the list so we can take immediate action to preserve and negotiate the liens for your facilities directly with you."  The next day Dr. Farnad sent Behdadnia a list of Behdadnia's clients who were treated at Dr. Farnad's facility and asked for "a case status update" and documents.  Dr. Farnad also asked Behdadnia to inform him of any clients not on the list who were treated at Dr. Farnad's facility so Dr. Farnad could "ensure patients were indeed treated at our facility for the dates of service reported."

Dr. Farnad emailed Behdadnia again in July 2024, stating that Behdadnia and Dr. Moussazadeh incorrectly told a relative of Dr. Farnad that Dr. Farnad was "holding up" settlement negotiations in the relative's case.  Dr. Farnad encouraged Behdadnia "to move forward with [the] settlement without entangling me further with your foggy relationship with Dr. Moussazadeh."  Behdadnia stated he "interpreted [Dr.] Farnad's statement as accusing" Behdadnia and his partners "of engaging in fraud with" Dr. Moussazadeh.

Dr. Farnad stated in his declaration that Dr. Moussazadeh's fraudulent billing put him at a "high risk of

---

subdivision (g), allowing Moussazadeh to take Behdadnia's deposition to verify the facts in the unsigned declaration.  The parties stipulated that, for purposes of the special motion to strike, the facts in Behdadnia's unsigned declaration were accurate.

legal exposure and reputational harm" because all charges for Dr. Moussazadeh's work at ISAG were submitted under ISAG's NPI and tax identification numbers.  Dr. Farnad also stated he "retained counsel to prosecute [his] claims in 2023."  In addition, Farnad submitted correspondence between the parties, including a December 2023 letter counsel for Dr. Farnad sent Dr. Moussazadeh stating Dr. Moussazadeh had engaged "in a systematic scheme to defraud Dr. Farnad" and insurers.  Counsel for Dr. Farnad demanded, among other things, that Dr. Moussazadeh "cease and desist negotiating or communicating with patients' counsel" about settling or resolving liens for services performed at ISAG and that he "fully cede such right to Dr. Farnad or his designees."  In the following weeks counsel for Dr. Farnad sought information from Dr. Moussazadeh regarding the status of liens for services provided at ISAG and the identity of personal injury attorneys who represented Dr. Moussazadeh's patients.

On January 30, 2024 Dr. Moussazadeh's attorney agreed to the content of a letter to be sent to personal injury attorneys (including Behdadnia) whose clients were treated at ISAG.  The letter stated:  "It has recently come to the attention of [Dr. Farnad, ISAG, and FMC] that certain information regarding . . . claims *submitted by Dr. Moussazadeh* may have contained erroneous information generated by *his office* about specific procedures or dates of procedures undertaken at" ISAG.  The letter stated any communications regarding claims for services provided by ISAG or FMC should be administered and settled through Dr. Farnad's office, not with Dr. Moussazadeh.  Counsel for Dr. Farnad attached a statement by counsel for Dr. Moussazadeh confirming "Dr. Moussazadeh has no objection

10

to your exclusive communications with" Dr. Farnad's office regarding the claims.

The evidence showed Dr. Farnad made the allegedly defamatory statements to personal injury attorneys while investigating claims Dr. Moussazadeh submitted for services performed at ISAG. Because Dr. Farnad's statements related to the substantive issues in his dispute with Dr. Moussazadeh, and because the personal injury attorneys had an interest in that dispute, the statements were made in connection with anticipated litigation under section 425.16, subd. (e)(2). (See *Bassi v. Bassi, supra*, 101 Cal.App.5th at p. 1096; *Neville v. Chudacoff, supra*, 160 Cal.App.4th at p. 1266.) First, there is little dispute that, when Dr. Farnad contacted Behdadnia in March 2024, Dr. Farnad was seriously considering suing Dr. Moussazadeh. (See *People ex rel. Allstate Ins. Co. v. Rubin* (2021) 66 Cal.App.5th 493, 499 [prelitigation communications are protected activity under section 425.16 "if those communications are 'relate[d] to litigation that is contemplated in good faith and under serious consideration'"]; see also *Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1023 ["communications sent in anticipation of litigation . . . constitute legitimate speech or petitioning activity protected under" section 425.16].) In December 2023 Dr. Farnad retained counsel, who wrote a letter threatening litigation against Dr. Moussazadeh and urging him "to seek competent counsel." Counsel for Dr. Farnad communicated with Dr. Moussazadeh's attorney throughout January and February 2024, demanding information and threatening to sue if Dr. Moussazadeh did not provide it. And in March 2024 the parties signed a tolling agreement and discussed possible mediators.

11

Second, Dr. Farnad's statements related to the substantive issues in the litigation. Moussazadeh identified the following defamatory statements (the first two in the cross-complaint and the others in Behdadnia's declaration): (1) Dr. Farnad told personal injury attorneys that Dr. Moussazadeh was defrauding the National Basketball Association's insurance company; (2) Dr. Farnad told personal injury attorneys that Dr. Moussazadeh was billing for injections he did not give; (3) Dr. Farnad told Behdadnia that Dr. Moussazadeh "was committing fraud and to be careful"; and (4) in a letter to Behdadnia, Dr. Farnad described Behdadnia's relationship with Dr. Moussazadeh as "foggy." All of those statements related to the substantive issues in Dr. Farnad's litigation against Dr. Moussazadeh, where Farnad alleged that Dr. Moussazadeh "fraudulently billed for services" he did not perform at ISAG and that he "*secretly pocket[ed]*" ISAG's share of payments.

The email exchange between Dr. Farnad and Behdadnia following their March 5, 2024 conversation provided context for Dr. Farnad's statements. Dr. Farnad asked Behdadnia for information and documents regarding Behdadnia's clients who were treated at ISAG, including "facility and anesthesia related claims, reports, and bills" and "lien negotiation documentation and lien payments for facility/anesthesia services." The information and documents Dr. Farnad sought were relevant to investigating whether Dr. Moussazadeh billed for services he did not provide and whether Dr. Moussazadeh withheld Dr. Farnad's portion of lien payments. (See *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1005 [company's email to its insurance providers "asking for documents and posing questions about the workers'

12

compensation insurance policy" "operated as an informal request for information and documents" and was a communication "made in preparation for or in anticipation of litigation"].)

In his March 6, 2024 email Dr. Farnad also asked Behdadnia to "please ensure ALL lien negotiations and settlement payments for [ISAG] and [FMC] are addressed directly to me." By asking Behdadnia to deal directly with Dr. Farnad, not Dr. Moussazadeh, Dr. Farnad was attempting to mitigate his losses by preventing Dr. Moussazadeh from taking Dr. Farnad's share of future payments.[4] These emails reveal why Dr. Farnad gave Behdadnia an explanation for his requests: Dr. Farnad suspected Dr. Moussazadeh was committing fraud. (See *Neville v. Chudacoff, supra*, 160 Cal.App.4th at pp. 1267-1268 [company's letter to customers accusing a former employee of misappropriating trade secrets and suggesting the customers not do business with the former employee arose from protected activity because the letter "constituted an attempt to prevent further misuse of [the company's] proprietary information, and thereby mitigate [its] "potential damage"].)

Third, the personal injury attorneys to whom Dr. Farnad made the allegedly defamatory statements were "'persons having some interest in the litigation.'" (*Bassi v. Bassi, supra*, 101 Cal.App.5th at p. 1096.) Dr. Farnad accused Dr. Moussazadeh of improperly collecting payments through lien recoveries from settlements and judgments the attorneys obtained for their clients. The personal injury attorneys were

---

[4] On January 23, 2024 Dr. Farnad's attorney sent Dr. Moussazadeh's attorney an email stating that Dr. Moussazadeh "has been stealing our money even during the last thirty days" and that it "just happened again last week."

parties to the lien settlement transactions with Dr. Moussazadeh and Dr. Farnad. Indeed, some of the attorneys were potential witnesses. For example, Farnad alleged that an attorney for one of Dr. Moussazadeh's patients told Dr. Farnad that the attorney gave Dr. Moussazadeh a $20,000 check for services performed at ISAG, but that Dr. Moussazadeh never gave Dr. Farnad ISAG's share of that payment.

*Neville v. Chudacoff, supra*, 160 Cal.App.4th 1255 is instructive. In that case a company fired an employee for violating his employment agreement by misappropriating the company's customer lists and soliciting its customers. (*Id.* at p. 1259.) The company's attorney wrote its customers a letter stating the former employee was violating his employment agreement by contacting customers and suggested the customers "have no further dealings" with the employee. (*Id.* at p. 1260.) Several months later the company sued the former employee, who filed a cross-complaint for defamation. (*Ibid.*) The court in *Neville* affirmed an order granting the company's special motion to strike under section 425.16. The court held the company's letter "related directly to [the company's] claims for breach of contract and misappropriation of trade secrets" and "was directed to [the company's] current and former customers—persons whom [the company] reasonably could believe had an interest in the dispute as potential witnesses to, or unwitting participants in, [the former employee's] alleged misconduct." (*Neville*, at pp. 1267-1268.) Dr. Farnad could reasonably have believed the personal injury attorneys in this case, like the customers in *Neville*, had an interest in the dispute between Dr. Farnad and Dr. Moussazadeh as potential witnesses to, or unwitting participants in, Dr. Moussazadeh's alleged misconduct. (See

14

*Contemporary Services Corp. v. Staff Pro Inc.* (2007)
152 Cal.App.4th 1043, 1051, 1055 [section 425.16 applied to the
defendant's allegedly defamatory statements about the plaintiff
in an email to mutual customers, "who had some involvement in
the parties' litigation"].)

Moussazadeh argues the trial court erred in relying on
prelitigation correspondence not identified in the cross-complaint
and concluding, based on that correspondence, Dr. Moussazadeh
"agreed to designate" Dr. Farnad "as the point [person] for
communication with the personal injury attorneys regarding the
allegedly faulty billing items." Moussazadeh argues the "trial
court essentially redrafted Moussazadeh's cross-complaint to
interpret it as including this correspondence." The trial court did
not redraft anything. The court properly relied on the evidence
submitted by the parties, which (as discussed) provided context
for the defamatory statements Moussazadeh alleged in the cross-
complaint. (See *Wilson v. Cable News Network, Inc.* (2019)
7 Cal.5th 871, 887 [on the first step of the analysis under
section 425.16 "courts must look beyond the pleadings to consider
any party evidentiary submissions as well"].)

Moussazadeh relies on two cases where courts held
statements were not sufficiently connected to litigation. Both
cases are distinguishable. In *Paul v. Friedman* (2002)
95 Cal.App.4th 853 a securities broker alleged an attorney
representing the broker's former clients in an arbitration
conducted an "unreasonably intrusive" investigation into the
broker's personal life and disclosed "embarrassing private facts
about [the broker] to clients and prospective clients." (*Id.* at
p. 857.) We stated the "issues actually under review by the
arbitrators bore no relationship to the allegations in [the

15

broker's] lawsuit." (*Id.* at p. 868.) We held that, though the attorney's investigation and disclosure had a "remote" connection to the arbitration, section 425.16 protects only those statements or writings with "a connection to an issue under review in a proceeding, and not merely to a proceeding." (*Paul*, at pp. 866, 868.) *Paul* does not apply here, where Dr. Farnad stated Dr. Moussazadeh was committing fraud—one of the key issues in his dispute with Dr. Moussazadeh.

*Bassi v. Bassi*, *supra*, 101 Cal.App.5th 1080 is likewise distinguishable. In *Bassi* the court affirmed the trial court's order denying an ex-wife's special motion to strike her ex-husband's petition for a domestic violence restraining order. (*Id.* at pp. 1087-1088.) The court held the ex-wife's emails describing the allegedly unethical behavior of the ex-husband's former family law attorney and stating the ex-husband's girlfriend worked for "mobsters" were "largely or wholly composed of assertions and innuendo that bear no clear relation to [the wife's] anticipated RICO action." (*Id.* at pp. 1098-1099.) Here, despite Moussazadeh's assertion Dr. Farnad's "defamatory statements to non-party personal injury attorneys offered no information on any substantive issue in his ultimate Complaint," Dr. Farnad's statements, as discussed, concerned one of the main issues in the anticipated litigation: whether Dr. Moussazadeh billed for services he did not provide.

Next, Moussazadeh argues Dr. Farnad's statements Dr. Moussazadeh was committing fraud were irrelevant to the litigation because Farnad did not assert a cause of action for fraud and fraud is not an element of any of Farnad's causes of action. Moussazadeh argues that the "gravamen" of Farnad's complaint "is that Moussazadeh allegedly was secretly pocketing

16

lien payments" and that Farnad did not allege Farnad was "directly damaged" by Dr. Moussazadeh's fraudulent billing. Moussazadeh interprets section 425.16 too narrowly. (See *Bassi v. Bassi, supra,* 101 Cal.App.5th at p. 1094 [section 425.16 "is to 'be construed broadly' in furtherance of its stated goals"].) Section 425.16 protects a statement "'if it relates to the substantive issues in the litigation'" (*Bassi*, at p. 1096); the statute does not require the statement to mention a cause of action or an element of a cause of action. (See *City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 373-374 [trial court erred in ruling only those statements that "included the word 'litigation'" were "'made in connection with this litigation'"].) Dr. Moussazadeh's allegedly fraudulent billing was a substantive issue in Farnad's litigation against Moussazadeh, even though the complaint did not allege a cause of action for fraud. Farnad alleged that Dr. Moussazadeh "fraudulently billed for services" not performed and that the fraudulent billing put "ISAG at significant risk and exposure" and caused "irreparable harm to its reputation and goodwill." Farnad also alleged Moussazadeh made "false and fraudulent insurance claims, utilizing *ISAG's* national provider identifier number." Dr. Farnad's statements, therefore, related to substantive issues in the litigation.

> 2. *Moussazadeh Did Not Show a Probability of Success Because the Litigation Privilege Bars Its Causes of Action*

At the second step of the analysis under section 425.16 "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt*

17

(2016) 1 Cal.5th 376, 384.) "The litigation privilege is 'relevant to the second step in the [section 425.16] analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing.'" (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 415; see *Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.) """"A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes a defendant's liability on the claims.""" (*Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361, 382; see *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 115.)

Under Civil Code section 47, subdivision (b), a "privileged publication or broadcast is one made" in any "judicial proceeding." The litigation privilege applies "'to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.'" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241; accord, *Geragos v. Abelyan, supra*, 88 Cal.App.5th at p. 1031.) Prelitigation communications are privileged if they "relate[ ] to litigation that is contemplated in good faith and under serious consideration." (*Action Apartment Assn.*, at p. 1251; accord, *Medallion Film LLC v. Loeb & Loeb LLP, supra*, 100 Cal.App.5th at p. 1290; see *Bonni v. St. Joseph Health System, supra*, 11 Cal.5th at p. 1024 [""communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege"""]; *Flatley v. Mauro, supra*, 39 Cal.4th at p. 322 [the "privilege has also been held to apply to 'statements made prior to the filing of a

18

lawsuit'"].)  The litigation privilege "is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.'"  (*Flatley*, at p. 322; see *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1063.)

The trial court correctly ruled the litigation privilege barred Moussazadeh's causes of action.  As discussed, all of Moussazadeh's causes of action were based on Dr. Farnad's allegedly defamatory statements to personal injury attorneys that Dr. Moussazadeh was committing fraud and billing for services he did not perform.  Dr. Farnad made the statements during his investigation into Dr. Moussazadeh's billing improprieties, with the goals of obtaining information and preventing Dr. Moussazadeh from misappropriating Dr. Farnad's share of future lien payments.  Therefore, Dr. Farnad's statements were related to his dispute with (and future litigation against) Dr. Moussazadeh and designed to achieve its objectives. (See *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361 [litigation privilege applies to "statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit"]; *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.*, *supra*, 59 Cal.App.5th at pp. 1005, 1007 [litigation privilege applied to a company's emails to its insurance provider, who was a potential witness and potential defendant, requesting information and documents "relevant to [the company's] expressed belief that [its insurance providers] had committed fraud in the sale of workers' compensation insurance" to the company].)

Relying on *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, Moussazadeh argues the litigation privilege does not apply

19

because Dr. Farnad's defamatory statements "were not necessary or useful steps in the litigation process and did nothing to serve its purposes." In *Rothman* the court held the litigation privilege did not protect statements by a celebrity's representatives during a press conference that an attorney and his clients had intentionally made false accusations against the celebrity to extort money from him. (*Id.* at p. 1139.) The court stated: "In sum, we hold that the litigation privilege should not be extended to 'litigating in the press.'" (*Id.* at p. 1149.)

Moussazadeh compares Dr. Farnad's statements to the "'public mudslinging' found to be unprotected in *Rothman*." Dr. Farnad, however, did not speak to the press, the public, or (as in *Rothman*) "persons who—however curious they might be about unsavory allegations concerning the private life of a particular celebrity—have no legitimate connection with any litigation which could be anticipated" between the attorney's clients and the celebrity. (*Rothman v. Jackson, supra*, 49 Cal.App.4th at p. 1151.) Instead, Dr. Farnad spoke to personal injury attorneys whose clients were treated at ISAG, for the purpose of investigating Dr. Moussazadeh's billing and preventing Dr. Moussazadeh from misappropriating Dr. Farnad's share of future payments. The personal injury attorneys had a legitimate connection with the dispute, and Dr. Farnad's statements were necessary, or at least useful, steps in the litigation process.

Moussazadeh also argues in passing that "statements to nonparticipants in the action are generally not privileged under Civil Code section 47, subdivision (b)." Though the litigation privilege does not "encompass publication to the general public through the press," it does protect a "publication to nonparties with a substantial interest in the proceeding." (*GetFugu, Inc. v.*

*Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 153; accord, *Susan A. v. County of Sonoma* (1991) 2 Cal.App.4th 88, 94; see *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 5-6 [litigation privilege protected a letter from a homeowners association's attorney to residents regarding litigation between the association and a homeowner]; cf. *Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 965 ["Communications to nonparticipants or to persons with no substantial interest in or connection to the proceeding are not privileged under Civil Code section 47, subdivision (b)."]; *Argentieri v. Zuckerberg* (2017) 8 Cal.App.5th 768, 784 ["the litigation privilege will not protect statements that are made to persons who lack a substantial interest in the litigation"].)

      C.     *The Trial Court's Order Granting Farnad's Motion for Attorneys' Fees Is Not Appealable*

Moussazadeh argues that, because the trial court erred in granting Farnad's special motion to strike, the court also erred in granting his motion for attorneys' fees. We do not have jurisdiction to hear an appeal from that order.

"An 'appellate court generally lacks jurisdiction to decide an appeal from an order unless the order is one that is expressly made appealable by statute.'" (*Clapkin v. Levin*, *supra*, 119 Cal.App.5th at p. 238; accord, *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 652; see *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 [a "trial court's order is appealable when it is made so by statute"].) Section 425.16, subdivision (i), states: "An order granting or denying a special motion to strike shall be appealable under Section 904.1." And section 904.1, subdivision (a)(13), provides an appeal may be

taken from "an order granting or denying a special motion to strike under Section 425.16." Neither section 425.16 nor section 904.1, however, authorizes an appeal from an order granting or denying a motion for attorneys' fees.

As we held in *Doe v. Luster* (2006) 145 Cal.App.4th 139, and reaffirmed in *Clapkin v. Levin*, *supra*, 119 Cal.App.5th 222, an order denying a motion for attorneys' fees under section 425.16, subdivision (c), is not appealable. (*Doe*, at p. 142.) In *Doe* we concluded the plain meaning of section 425.16, subdivision (*i*), which authorizes an appeal from an order granting or denying a special motion to strike, did not encompass a ruling on "an interlocutory order granting or denying attorney fees following the trial court's ruling on a special motion to strike." (*Doe*, at p. 147.) We continue to follow *Doe* and decline to follow cases concluding that, where a party appeals from an order granting or denying a special motion to strike, section 425.16, subdivision (i), also confers appellate jurisdiction over an order granting or denying attorneys' fees. (See, e.g., *Gumarang v. Braemer on Raymond, LLC* (2025) 110 Cal.App.5th 370, 387-388; *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 275.) The problem with *Gumarang* and *Baharian-Mehr* is that the statutory language does not support their conclusion. That it might be more efficient to consider appeals from both orders at the same time does not override the plain statutory language making only one of the orders appealable.

22

## DISPOSITION

The order granting Farnad's special motion to strike under section 425.16 is affirmed. Moussazadeh's appeal from the order granting Farnad's motion for attorneys' fees is dismissed. Farnad is to recover its costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.